

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 1, 2025

**BY ECF**
The Honorable Jessica G. L. Clarke
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Anton Peraire-Bueno, et al.*, 24 Cr. 293 (JGLC)

Dear Judge Clarke:

    The Government respectfully moves for reconsideration of the Court's April 17, 2025, order (the "Order," ECF No. 82) ordering a *Franks* hearing in this case. It is unusual for our Office to seek reconsideration of a court order. We do so here because it is clear from the Court's Order that the Government should have been more thorough in its prior briefing and oral argument on the requirements that must be satisfied under established Second Circuit law before granting a *Franks* hearing. The Government seeks to provide that additional authority and analysis to the Court now in the hopes of preventing a manifest injustice.

    A law enforcement officer should not be summoned to a hearing based on unsupported allegations of having made deliberately false statements under oath unless and until the Court concludes that such a hearing is unavoidably necessary to resolve the defendant's claims. Such hearings—even when the Court ultimately concludes that the agent made no deliberate misstatements—can have serious consequences for an agent's career and should only be ordered when demonstrably required. Here, both because probable cause supports the issuance of the warrant independent of the alleged misstatements, and because there is no evidence whatsoever that the case agent made knowing and intentional false statements when seeking the warrant, no hearing should be held.

    Here, the Court ordered a *Franks* hearing—which are "exceedingly rare" in this District, *see United States v. Melendez*, No. 16 Cr. 33 (LTS), 2016 WL 4098556, at *7 (S.D.N.Y. July 28, 2016[1]—without conducting the full three-part analysis required by *Franks v. Delaware*, 438 U.S. 154 (1978), and its progeny. Specifically, the Court did not find, as is required before ordering a hearing, that the defendants made a "substantial preliminary showing" that "the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*,

---

[1] Unless otherwise indicated, all quotations omit internal quotation marks, citations, and previous alterations.

152 F.3d 88, 113 (2d Cir. 1998). While the Court reserved decision on this materiality prong of the *Franks* test (*see* Order at 3), Second Circuit law requires that the Court consider whether probable cause remains for the warrant even if the challenged statements were excised (or amended as the defense proposes) before holding any hearing. *See United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (citing *Franks*, 438 U.S. at 155–56); *United States v. Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987) (explaining that under the materiality requirement, "the defense motion ***must*** be denied without a hearing if, after setting aside the allegedly misleading statements or omissions, there remains a residue of independent and lawful information sufficient to support probable cause" (emphasis added)); *Salameh*, 152 F.3d at 113 ("If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing."). The Government respectfully submits, as set forth below, that there was plainly probable cause to issue the Google Warrant[2] without the statements now challenged by the defendants, none of which were necessary to the probable cause determination.

In addition, Second Circuit law also requires that a court separately determine whether the defendants made a substantial preliminary showing that the offending statement were made knowingly and intentionally, or with a reckless disregard for the truth, before ordering a hearing. *Salameh*, 152 F.3d at 113. This showing must be based on something more than the fact of alleged inconsistencies in the affidavit that are equally susceptible to a good faith explanation. *See United States v. Maxwell*, 545 F. Supp. 3d 72, 84 (S.D.N.Y. 2021). In its ruling, the Court collapsed the falsity and intent prongs of the *Franks* test by presuming the possibility of bad intent on the basis of apparent differences between the affidavit and the subsequently returned indictment. *See* Order at 4 ("This conflict suggests that the Special Agent could have made these statements with at least a reckless disregard for the truth."). The Government respectfully submits, as set forth below, that this finding falls far short of the *Franks* standard and does not merit a hearing.

I. **The Court Should Not Grant a *Franks* Hearing Without Deciding the Materiality of Each of the Alleged False or Misleading Statements**

"To be entitled to a *Franks* hearing," a defendant must make a substantial preliminary showing on all three prongs of the *Franks* standard: *first*, that the warrant affidavit included a false statement; *second*, that the false statement was made "knowingly and intentionally, or with reckless disregard for the truth;" and *third*, that the offending statement "is necessary to the finding of probable cause." *Sandalo*, 70 F.4th at 85 (citing *Franks*, 438 U.S. at 155–56). "A defendant's obligation to prove these elements is well established" in the Second Circuit. *Id.* As then-District Judge Nathan explained in *United States v. Maxwell*, this test means that even if a warrant affidavit contained factual errors, *Franks* requires the following analysis to "justify an evidentiary hearing":

> [The defendant] must thus make a substantial preliminary showing on each of *Franks*' requirements to justify an evidentiary hearing. That is, she must first make a substantial preliminary showing that the Government deliberately or recklessly misrepresented facts to [the judge authorizing

---

[2] For ease of reference, the Government adopts and incorporates by reference all defined terms used in its initial briefing and the underlying affidavit. *See* Dkt. Nos. 61, 56-9.

> the warrant]. Second, she must make a substantial preliminary showing that [the judge authorizing the warrant] would have denied the Government's application absent any such misrepresentation.

*Maxwell*, 545 F. Supp. 3d at 83.

"The materiality requirement [*i.e.*, the third prong of the test] is often considered first because, as the Supreme Court explained in *Franks*, 'if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant to support a finding of probable cause, no hearing is required.'" *United States v. Lauria*, 70 F.4th 106, 125 (2d Cir. 2023) (quoting *Franks*, 438 U.S. at 171–72). The Second Circuit has overturned suppression decisions where the district court makes "no determination as to materiality" as required under the established *Franks* standard. *United States v. Lambus*, 897 F.3d 368, 397–98 (2d Cir. 2018). Court in this District routinely deny *Franks* hearings, even in cases where an affidavit may contain errors, where the challenged statements were not pivotal to establishing probable cause for a given search. *See, e.g., United States v. Ray*, 541 F. Supp. 3d 355, 386 (S.D.N.Y. 2021) (Liman, J.) (declining to hold a *Franks* hearing because the defendant had not made a substantial preliminary showing that the challenged statements were necessary for probable cause or that they were made intentionally); *Maxwell*, 545 F. Supp. 3d at 83; *United States v. Kidd*, 386 F. Supp. 3d 364, 371 (S.D.N.Y. 2019) (Marrero, J.) (denying *Franks* hearing based on court's finding of probable cause even without the allegedly false statement).

In this case, the Court declined to address whether sufficient probable cause existed without the challenged statements, but this step in the *Franks* analysis must be taken before ordering a hearing. *Compare* Order at 3 ("Although the Court declines to conclude now whether there was still probable cause to issue the warrants if the offending statements were removed, there is at least some showing of materiality here."), *with Sandolo*, 70 F.4th at 85 (holding that "[t]o be entitled to a *Franks* hearing," a defendant must make a preliminary showing on all three prongs of the *Franks* standard). The need to correct that error, and thereby avoid the manifest injustice that would result, supports the Court's reconsideration of its Order and denial of the defendants' suppression motion without a hearing. *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2015) (reconsideration can be granted when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice"); *Immigrant Def. Project v. U.S. Immigration and Customs Enforcement*, No. 14-cv-6117 (JPO), 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) ("Motions for reconsideration are. . .committed to the sound discretion of the district court.").[3]

---

[3] The Order appeared to cite *United States v. Rajaratnam*, 719 F.3d 139 (2d Cir. 2013), for the proposition that "[w]here a defendant makes a preliminary showing that the government's affidavit misstated or omitted material information, *Franks* instructs a district court to hold a hearing to determine whether the alleged misstatements or omissions in the warrant or wiretap application were made intentionally or with reckless disregard for the truth and, if so, whether any such misstatements or omissions were material." Order at 3. However, this quotation is derived from the district court's opinion in that case and does not precisely reflect the Second Circuit's standard, in subtle but important ways.

The Court's reference to "some showing" of materiality does not establish a "substantial preliminary showing" that the statements in the affidavit challenged by the defense (as alleged falsehoods) "were necessary to the [magistrate] judge's probable cause finding." *Salameh*, 152 F.3d at 113. The correct procedure to assess the necessity of the challenged statements to the probable cause determination, as the Second Circuit explained in *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000), includes the following steps:

> To determine if the false information was necessary to the issuing judge's probable cause determination, *i.e.*, material, a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant. If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate. As with the inclusion of false information, omissions from an affidavit that are claimed to be material are governed by the same rules. The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause.

*Canfield*, 212 F.3d at 718. Where such probable cause remains set out in the warrant affidavit, "[f]urther factual development is not necessary." *Id.*, 212 F.3d at 721.

As shown in Exhibit 1, which excises the statements challenged by the defendants, the Google Warrant affidavit sets forth the following uncontested facts, which on their own, are plainly sufficient for probable cause:

- Victim-1, a representative from the company that designed the particular software that was exploited (the "MEV Boost Representative"), and public reporting identified a suspected computer exploit (the "Exploit") on April 2, 2023, which resulted in the theft of approximately $25 million worth of cryptocurrency. (Exhibit 1, ¶¶ 8, 16-18).

- Approximately $3 million worth of cryptocurrency from the Exploit was frozen by foreign law enforcement shortly after the public reports. (*Id.* ¶ 16(h) n.6)).

- Between April 3, 2023 and November 20, 2023, the remaining portion of the cryptocurrency taken was converted to U.S. dollars and deposited into bank accounts controlled by the defendants. (*Id.* ¶¶ 8, 22-27 and Appendix 1).

- The defendants ultimately received "approximately $20,481,431" of this money in their bank accounts after numerous steps to conceal its source. For example, prior to the defendants' receipt of the money, the funds were transferred through dozens of private cryptocurrency addresses, foreign-based cryptocurrency exchanges, privacy protocols, shell companies, and multiple bank accounts—all of which are indicative of the defendants' fraudulent intent. (*Id.* ¶¶ 8, 16(i), 17(b), 17(d)-(h), 18(e)-(g), 22-31, and Appendix 1).

- Prior to the date of the Exploit, the defendants initiated a series of cryptocurrency trades beginning a couple months before the Exploit, which were designed to analyze the trading behavior of the Victim Traders. (*Id.* ¶ 16(i)).

- Using the information the defendants learned about the trading behavior of the Victim Traders, on or about April 2, 2023, the defendants sent specific trading requests that were "most likely to cause" the Victim Traders to propose certain trades. (*Id.* ¶¶ 12, 16(c), (i), 17(b), (d)).

- The defendants then exploited a vulnerability in certain computer code using a "False Signature [that] caused the relay code to incorrectly verify that the blockheader had been validly signed," which allowed the defendants to gain premature access to the Victim Traders' private trading transactions. (*Id.* ¶¶ 16(f), 18(a)-(e)).

- Once in premature possession of these private trading transactions, the defendants changed the transactions on a proposed block by removing certain transactions from the proposed block and replacing them with others. These changes allowed the defendants to obtain $25 million worth of cryptocurrency, that is, the same amount cited by Victim-1 and public reporting regarding the Exploit. (*Id.* ¶¶ 16(g)-(h), 17(c)-(d), (g), 18(d), 23(a)).

- The defendants were penalized by other Ethereum users for "improperly sign[ing] the Corrupt Block by sending the False Signature." (*Id.* ¶ 18(g)).

- The bank accounts used to receive and subsequently move the approximately $20 million in fraud proceeds were registered to the defendants at the Google email accounts to be searched, some of which were used to correspond with the bank regarding the source of the approximately $20 million. (*Id.* ¶ 25).

Furthermore, the probable cause for the search warrant did not rest on the statements that the Court's order referenced, namely the use of the word "hacker" and the changes that were made to the MEV-Boost diagram (*see* Order at 4).[4] Even if these statements were excised, the affidavit still describe how the defendants baited the Victim Traders and exploited a vulnerability in certain software to obtain $25 million worth of cryptocurrency.

These facts set forth above, none of which the defendants appear to challenge, would have been sufficient to find probable cause that evidence of criminal activity would be found on the Google email accounts—namely, that (i) approximately $25 million in cryptocurrency was stolen

---

[4] As explained in Section IV, the Court's Order did not specifically identify which of the six statements are subject to a Frank's hearing. In addition, the Court apparently determined that the use of the term "hacker" was indicative of falsity; however, not only was the use of that term not false, but it is not a statement that the defendants challenge in their motion to suppress.

by the defendants through false statements and trading requests that were not bona fide; (ii) the stolen cryptocurrency was converted to approximately $20 million in U.S. dollars, which was transferred to bank accounts associated with the defendants; and (iii) those same bank accounts were registered to the defendants at the Google email accounts,[5] some of which were used to correspond with the banks about the source of the alleged fraud proceeds themselves. *See Lauria*, 70 F.4th at 128 (explaining that probable cause requires only a "fair probability that contraband or evidence of a crime will be found" based on a "totality of circumstances").

At bottom, the isolated phrases plucked out of the totality of facts by the defendants or cited by the Court's Order were not the make-or-break factors in the Magistrate Judge's probable cause determination, as opposed to the cumulative evidence presented in the Google Warrant affidavit through, among other things, Victim-1 and the MEV-Boost Representative's summaries and corroborating financial records, cryptocurrency tracing analyses, IP address matching analyses, and validator penalization evidence. *See* Exhibit 1, ¶¶ 16, 18, 20-25. It is well-settled that probable cause is a "practical, commonsense decision" whether all the "circumstances set forth in the affidavit" gives rise to a "fair probability" that evidence of a crime will be found. *Canfield*, 212 F.3d at 718. Indeed, probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *Id.*[6] Because defendants fail to show that excising the challenged statements removes any "residue of independent and lawful information sufficient to support probable cause," the "defense motion must be denied." *Levasseur*, 816 F.2d at 43. The Government respectfully requests that the Court reconsider its prior decision and decline to hold a *Franks* hearing because the challenged statements were not necessary to the Magistrate Judge's finding of probable cause.

## II. The Defendants Have Not Made a Substantial Preliminary Showing that the Challenged Statements Were False, Much Less Made Knowingly and Intentionally, or with a Reckless Disregard for the Truth

In ordering a *Franks* hearing, the Court concluded that "[m]any of the statements that Defendants contend are false appear to be directly in conflict with publicly-available information" and that "[t]his conflict suggests that the Special Agent could have made these statements with at least a reckless disregard for the truth." Order, at 2 (emphasis added); *Contra United States v. Jenkins*, 16 F. App'x 64, 68 (2d Cir. 2001) (recklessness properly inferred "where the omitted information was ***clearly critical*** to the probable cause determination"). The Court's conclusion does not satisfy the standard for a *Franks* hearing, because the *Franks* standard requires the Court to find that the defendants make a substantial preliminary showing that the agent in fact made a false statement ***and*** that the statement was made "knowingly and intentionally, or with reckless

---

[5] The defendants do not challenge the probable cause finding that evidence of the alleged crimes would be found in their Google accounts.

[6] While the Government strives for complete accuracy and precision, the Second Circuit has also expressly observed that "[e]very statement in a warrant affidavit does not have to be true" to survive a defendant's challenge. *Canfield*, 212 F.3d at 717; *see also United States v. Trzaska*, 111 F.3d 1019, 1027 (2d Cir. 1997).

disregard for the truth." *Sandalo*, 70 F.4th 77 at 85. The Court's Order inappropriately collapsed the first two prongs of the *Franks* standard into one.

As proof of both falsity and intent, the Court focused on apparent discrepancies between the affidavit and the indictment. Even if such discrepancies establish falsity—and for the reasons set forth below, they do not—those discrepancies do not establish bad intent. For example, the Court's Order alluded to the fact that the affidavit describes the defendants as "hackers," but the indictment does not adopt that characterization. Order, at 4. That difference does not establish that the case agent provided *false* information to the Magistrate Judge, let alone that the agent did so knowingly and intentionally, or with a reckless disregard for the truth. One of the "Subject Offenses" under investigation in the affidavit was a violation of Section 1030—the computer intrusion or "hacking" statute; the indictment, to the contrary, ultimately did not charge Section 1030, but charged wire fraud, wire fraud conspiracy, and money laundering conspiracy. Use of the term "hacker" in the affidavit was appropriate in light of the Subject Offenses then under investigation at the time of the affidavit. and the facts describing the potential exploitation of a coding vulnerability. The absence of the term in the indictment, a document returned at a later point in time by the grand jury—not a statement of the case agent—does not support the conclusion that the case agent made any false statement in the affidavit knowingly or intentionally, or with a reckless disregard for the truth.

Judge Nathan's decision in *United States v. Maxwell* is instructive. There, the defendant demanded a *Franks* hearing and suppression of certain evidence by claiming that the Government made reckless and deliberate misrepresentations by not informing the judge about certain communications with a victim. The *Maxwell* court concluded—without holding a hearing—that the defendant had failed to make a substantial preliminary showing that the challenged omission was deliberate or reckless, because it was "equally plausible" that the challenged omission was susceptible to a good faith explanation. *Maxwell*, 545 F. Supp. 3d, at 84. The same is true here. Any difference between the affidavit and the indictment is equally susceptible to a good faith explanation given that the affidavit included Section 1030 and the indictment did not, and therefore that difference fails to make a substantial preliminary showing that the case agent made a false statement knowingly and intentionally, or with reckless disregard for the truth. *United States v. Nelson*, 828 F. App'x 804, 808 (2d Cir. 2020) (same). As the Second Circuit has advised, "Courts have repeatedly been warned not to 'interpret[ ] the [warrant] affidavit in a hypertechnical, rather than a commonsense, manner'" when applying the *Franks* standard. *Canfield*, 212 F.3d at 719 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965)). Faulting an agent for the purportedly imprecise use of the term "hacker"—and effectively to put them on trial for lying to a Court as a result—would transgress this clear, controlling guidance from the Circuit. *See, e.g.*, *United States v. Mathews*, 841 F. App'x 296, 300 (2d Cir. 2021) (affirming denial of *Franks* hearing because defense counsel's disagreement with affiant's characterization of evidence cited "does not rise to the level of a substantial preliminary showing of deliberate falsity or reckless disregard for the truth"); *United States v. Costanzo*, No. 22 Cr. 281 (JPO), 2023 WL 8451868, at *4 (S.D.N.Y. Dec. 6, 2023) (finding that parties' "competing interpretations" of certain evidence provided "no basis to conclude that [it] constitutes a misstatement for the purposes of the *Franks* analysis"); *cf. United States v. Wilbert*, 818 F. App'x 113, 115 (2d Cir. 2020) (explaining that "minor discrepancies . . . fall short of the substantial preliminary hearing of deliberate or reckless falsity that a defendant must make before the Fourth Amendment requires a *Franks* hearing").

The record before the Court does not come close to establishing that any false statement or omission was the result of the case agent's intention to deceive. Indeed, this is why *Franks* rigorously gated the circumstances under which a defendant could be entitled to a hearing. *See Franks*, 438 U.S. at 170. Requiring the case agent to sit for *Franks* hearing—which by necessity implies that there is substantial evidence that he misled the court on material facts—would be a manifest injustice. The Government respectfully submits that reconsideration is appropriate in these circumstances.

### III.    The Government Has Not Conceded Any Prong of the Franks Standard

It is evident from the Court's order that the Government should have been clearer and more thorough in its opposition to the defendants' motion to suppress and in oral argument. However, the Government has not conceded or waived any prong of the *Franks* standard.

For example, the Court's Order stated that the Government failed to address "what would remain in the affidavits if the statements at issue were removed in its brief or at oral argument." Order at 3, n.3. However, at the outset of its opposition to the defendants' suppression motion, the Government outlined the facts alleged in the affidavit (Dkt. 81 ("Gov't Br.") at 44-45) and argued that "the probable cause supporting the Google Warrant did not rest on any of these isolated statements" challenged by the defense, *see* Gov't Br. at 49. The Government then presented uncontested facts that supported probable cause even if the Court excised each of the challenged statements. *See id.* at 50-51 (outlining the uncontested facts that the Lure Transactions were designed to bait the Victim Traders to trade and were not bona fide trades, making the challenged omission that the Lure Transactions were ultimately published after the cryptocurrency was stolen immaterial to the crime); *id.* at 52-53 (describing how sandwich trading in part relies on tokens that have smaller liquidity pools, making the challenged false statement that these tokens were "more obscure" immaterial to a finding of probable cause); *id.* at 53-54 (describing how the affidavit described the Victim Traders as engaging in sandwich trading, making the use of the phrase "cryptocurrency arbitrage trading" immaterial to probable cause); *id.* at 56-57 (explaining how adopting the defendant's preferred word choice of "re-ordered" instead of "altered" would not have made a difference to the substance of the warrant); *id.* at 58-59 (explaining that adding the defendants' characterizations to the MEV-Boost Diagram would not have undermined the substance of the agent's explanation of the MEV-Boost system); *id.* at 59 (explaining that the defendant's claim that the affidavit falsely stated that the defendants "tampered with the blockchain" was not material to probable cause).

Likewise, the Government never conceded that any of the six alleged "falsehoods" were inaccurate based on the totality of the facts alleged in the warrant affidavit, let alone knowingly false *or* material to the probable cause showing. *See id.* at 49-59. Thus, the defendants' reply brief's claims that the Government conceded errors in the affidavit do not accurately reflect the Government's position. To the contrary, the Government strongly contested—and continues to contest—the assertion that any of the challenged statements were inaccurate. *See id.*

### IV. In the Alternative, if the Court Denies Reconsideration, the Court Should Identify the Alleged "Intentional Falsehoods" that It Finds Material to Probable Cause to Appropriately Limit the *Franks* Hearing

For the reasons stated above, the Government respectfully requests that the Court reconsider its Order granting a *Franks* hearing. Should the Court deny the Government's motion, the Government respectfully requests that the Court identify the statements that it finds material to probable cause and for which the defendants have made a substantial preliminary showing of intentional falsity or reckless disregard for truth, to allow the Government to adequately prepare for the hearing.

### V. Conclusion

For the foregoing reasons, the Court should deny the defendants' motion to suppress without a *Franks* hearing.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: /s/ _____
Rushmi Bhaskaran / Jerry Fang / Danielle Kudla
Assistant United States Attorneys
(212) 637-2439 / 2304 / 2584

Cc: Counsel of Record (by ECF)