**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>v.<br><br>ANTON PERAIRE-BUENO, and JAMES PERAIRE-BUENO,<br><br>      Defendants. | Case No.:  1:24-cr-00293-JGLC |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION TO EXCLUDE EVIDENCE OF PROMISES BY THIRD PARTIES**

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................1

ARGUMENT .......................................................................................................................4

I.     Evidence of Third-Party Promises Is Irrelevant.................................................5

II.    Evidence of Third-Party Promises Unfairly Risks Conviction on an Invalid Theory. .................................................................................................................8

CONCLUSION..................................................................................................................10

Defendants James and Anton Peraire-Bueno respectfully move to exclude at trial evidence of or argument about supposed promises and statements by entities other than the Peraire-Buenos that the alleged Victim Traders' sandwich attack bundles would remain intact.  Specifically, it is likely the government (a) will seek to introduce evidence that Flashbots or other MEV-Boost users supposedly made representations that the transactions in the alleged victims' sandwich attack bundles would be executed in their preferred order or not all; and (b) will argue based on such evidence that the Peraire-Buenos committed fraud by upsetting the expectations those third-party promises may have engendered.  Such evidence is irrelevant and inadmissible under Federal Rules of Evidence 401 and 402 because only statements by the defendants (not unaffiliated third parties) can support a wire fraud conviction.  The evidence is also unfairly prejudicial and inadmissible under Federal Rule of Evidence 403, because it would confuse the jury and risk conviction on a legally invalid theory.

## BACKGROUND

As the Court recognized in its Order on the Peraire-Buenos' Motions to Dismiss the Indictment, the wire fraud statute requires a material misrepresentation or omission with a duty to disclose, and the government has charged a misrepresentation (as opposed to omission) case.  *See* ECF 112 at 17-18 & n.4.  The Court further held that the Superseding Indictment ("Indictment") adequately alleged two misrepresentations by the Peraire-Buenos—the Lure Transactions and the False Signature.  *See id.* at 18-19.  To prove its fraud allegations the government must establish (among other things) that these alleged misrepresentations by the Peraire-Buenos conveyed some materially false or misleading meaning.[1]  The Peraire-Buenos will vigorously dispute at trial that either alleged misrepresentation could convey any materially false meaning or did so here.

---

[1] *See United States v. Runner*, 143 F.4th 146, 154 (2d Cir. 2025) ("To prove a scheme to defraud, the government must prove that the defendant made misrepresentations that were 'material[.]'

1

Through Indictment allegations, arguments in pleadings, and discovery, the government has indicated that it may pursue an alternative theory at trial that relies on representations by persons or entities other than the Peraire-Buenos instead of or in addition to only the two "representations" alleged in the Indictment. By way of examples, the Peraire-Buenos have identified two such categories of representations subject to this motion.

*First*, the government may seek to elicit testimony that Flashbots, the company that published the MEV-Boost software, supposedly made promises to its users about how that software handled sandwich attack trades. According to the government, Nonparty-1's representative "will explain how" his "trading bots'" trades "take place in bundles of transactions" and "will further explain that [he] chose to use the MEV-Boost trading system to effectuate this trading strategy based on [his] *understanding* that the MEV-Boost system provided certainty that the proposed bundles would be published to the chain as originally ordered and structured, or not at all." ECF 111 at 3-4 (emphasis added). Although the government has not disclosed the basis of that "understanding," it cannot be based on any communications from the Peraire-Buenos because they never communicated with the alleged victims or their MEV Bots. Rather, Nonparty-1's representative might testify that he based that understanding on information from Flashbots, including material posted online. The government's preliminary exhibit list contains images of Flashbots' MEV-Boost webpage from dates before the alleged Exploit. These pages contain

---

(cleaned up)); *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) ("Moreover, to establish the existence of a scheme to defraud, the Government must prove the *materiality* of a defendant's false statements or misrepresentations."); *United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017) ("[T]he materiality of the misrepresentations is an element of mail and wire fraud[.]"); *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000) ("The fraud statutes are violated by affirmative misrepresentations or by omissions of material information that the defendant has a duty to disclose."); *see also United States v. Eisenberg*, 2025 WL 1489248, at *22, *26 (S.D.N.Y. May 23, 2025) (contrasting commodities fraud, which does not require a material misrepresentation, with wire fraud, which does).

2

written descriptions of MEV-Boost which includes claims about its treatment of bundles. *See* Ex. 1 (compendium of screenshots).[2] The government has also produced versions of Flashbots material annotated by Nonparty-1.

*Second*, the government may seek to elicit testimony about supposed communications between Nonparty-1's bots and the "builder" regarding Nonparty-1's preferred order of transactions in the sandwich attack bundles. The Indictment alleges the existence of "coded conditions" "included" in the MEV Bots' sandwich attack bundles that purportedly were designed to keep the bundles intact. *See* ECF 70 ¶ 24. The Court accepted Nonparty-1's representation that any supposed "conditions" would not be in the code for the MEV Bots or their sandwich attack transactions themselves but rather in separate communications between the MEV Bots and the builders. *See* ECF 112 at 34.[3] Nonparty-1 has confirmed it does not possess these supposed communications, and the government has not produced them in discovery. Ex. 2.[4] Nevertheless, the government may seek to elicit testimony about supposed communications between Nonparty-1's MEV Bots and the builder that concern Nonparty-1's preference for the order of transactions in the bundle.

---

[2] Notably, the Flashbots website contains no explicit promises guaranteeing that sandwich attack bundles would remain intact. That is probably because those promises would be technologically impossible to guarantee. *See infra* n.3

[3] The Indictment allegation of "coded conditions" in the bundled transactions themselves is false for the additional reason that it is impossible under the relevant blockchain technology to include conditions that would guarantee that the proposed bundles would be published to the chain as originally ordered, or not at all. *See* ECF 122-1. Rather, searchers like the alleged Victim Traders merely express their preference for the order of transactions when conveying their bundles to the builder. The Peraire-Buenos expect this technological limitation on the ability to keep sandwich attack bundles intact will be undisputed at trial and that the government ultimately will abandon its false "coded conditions" allegation.

[4] The Peraire-Buenos are separately moving to exclude testimony from Nonparty-1's representative about the supposed coded conditions under Federal Rule of Evidence 1002.

3

The government may seek to use evidence of these two categories of statements, or other similar statements, supposedly made by entities other than the Peraire-Buenos regarding the alleged Victim Traders' sandwich attack bundles to suggest that the Peraire-Buenos committed fraud by acting contrary to the expectations those third-party statements may have engendered. In other words, it appears the government might argue that a defendant commits fraud if his actions have the effect of breaking promises that others may have made to the alleged victims—here, by "unbundling" bundles of transactions that others (but not the Peraire-Buenos) may have promised would remain intact. It seems likely the government will pursue this "third-party promise" theory because, in its pleadings, the government has communicated its view that the alleged victims' expectations about how MEV-Boost worked, and their incorrect assumption that MEV-Boost prevented the "unbundling" of sandwich attack bundles, are relevant. The government has repeatedly made this point despite it being undisputed that the Peraire-Buenos had nothing to do with setting or shaping those supposed expectations or assumptions of the alleged victims. As explained herein, because a theory of fraud based on those upset expectations is legally invalid, evidence supporting it is irrelevant or otherwise inadmissible and should be excluded at trial.

## ARGUMENT

The Court should exclude evidence of or argument about supposed promises made by other users of the MEV-Boost software, specifically about the unbundling of transactions sent to a builder. That evidence is irrelevant because only misrepresentations by a defendant can give rise to criminal liability under the wire fraud statute. *See* Fed. R. Evid. 401, 402. And even if the evidence is marginally probative of some other issue, its admission risks jury confusion and conviction on a legally invalid theory of fraud. *See* Fed. R. Evid. 403.

4

## I. Evidence of Third-Party Promises Is Irrelevant.

Evidence that other entities—whether it be Flashbots, the builder, or anyone else who is not the Peraire-Buenos—made supposed representations and/or promises that the sandwich attackers' bundles would remain intact is irrelevant and thus inadmissible. Fed. R. Evid. 401, 402. Such evidence supports only a theory of upset expectations that others (not the Peraire-Buenos) may have created, which is insufficient to prove the charged offenses against the Peraire-Buenos.

The government has charged the Peraire-Buenos with conspiring to violate, and violating, the wire fraud statute. That statute criminalizes schemes to defraud through material misrepresentations *by the defendant*. See *United States v. Runner*, 143 F.4th 146, 154 (2d Cir. 2025) ("To prove a scheme to defraud, the government must prove that *the defendant made* misrepresentations that were 'material[.]' (emphasis added)); *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) ("Moreover, to establish the existence of a scheme to defraud, the Government must prove the *materiality* of a *defendant's* false statements or misrepresentations." (citation omitted) (second emphasis added)); *accord, e.g.*, *United States v. Gee*, 226 F.3d 885, 892 (7th Cir. 2000). In *Gee*, the Seventh Circuit reversed mail and wire fraud convictions where the government "failed to prove that [defendants] Norris or Gee made any false or misleading statements." *Id.* The court rejected the theory that evidence that the defendant's customers misrepresented facts to the allegedly defrauded party (a cable company) established a scheme to defraud because the evidence did "not prove . . . that *defendants* misrepresented or concealed material facts," nor did the government prove that the defendants "induced any of their customers to make false or misleading statements." *Id.* (emphasis in original); *see also United States v. United Imports Corp.*, 165 F. Supp. 2d 969, 972 (D. Neb. 2000) (reaching similar holding in mail and wire fraud case).

As these cases demonstrate, a necessary component of a fraud offense is the creation of a misleading impression by the defendant through his own misrepresentation or misrepresentations he causes to be made. If the defendant then upsets the expectations of the victim (or deceived party)[5] that the defendant himself engendered, he may be guilty of fraud. But if his actions merely upset the expectations that the victim (or deceived party) may have had independent of any interaction with the defendant, those actions (without more) are not fraudulent. The most instructive Second Circuit case demonstrating this principle is *United States v. Finnerty*, 533 F.3d 143 (2d Cir. 2008).

In *Finnerty*, the Second Circuit affirmed a judgment of acquittal of securities fraud for a "specialist at the New York Stock Exchange ('NYSE') who had engaged in the practice of 'interpositioning'—the arbitrage of the gap between customers' orders to buy and sell stock—to the benefit of his firm's account and (via compensation) himself." *Id.* at 145. "The sole issue on appeal [was] whether the government proved that Finnerty's conduct was deceptive." *Id.*[6] The

---

[5] Under Second Circuit law, the party deceived (*i.e.*, the "victim" of deception) need not be the same as the party whose money or property is the object of the scheme (*i.e.*, the "victim" of the ultimate scheme). *See United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016). In either scenario, however, fraud occurs when *the defendant* uses a misrepresentation to deceive. *See, e.g.*, *id.* at 307 ("That the Superseding Indictment alleges that *Greenberg's misrepresentations* were directed at acquiring banks and others, but that the credit card holders were the intended victims of the scheme, is irrelevant." (emphasis added)).

[6] Finnerty was convicted on a fraud theory under SEC Rule 10b-5(a) & (c), which prohibit the use of an instrumentality of interstate commerce "(a) [t]o employ any device, scheme, or artifice to defraud," or "(c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." *Id.* at 146 (quoting 17 C.F.R. § 240.10b-5 (1995)). The district court dismissed the indictment pretrial to the extent it relied on subsection (b) of that rule, which prohibits making "untrue statement[s] of material fact," because the indictment "did not identify any statements that were misleading." *Id.* As a result, the government proceeded on "a theory of non-verbal deceptive conduct." *Id.* at 148. This theory was available because the securities fraud statute, unlike the wire fraud statute, does not require a misrepresentation. *See, e.g.*, *United States v. Royer*, 549 F.3d 886, 900 (2d Cir. 2008). This distinction makes *Finnerty*'s holding even more instructive here. The conclusion that the alleged conduct did not constitute

6

court's holding turned on the outer limits of what it means to act with an intent to defraud. As the court explained, "[b]road as the concept of 'deception' may be, it irreducibly entails some act that gives the victim a false impression." *Id.* The defendant was not guilty because the government "identified no way in which [he] communicated anything to his customers, let alone anything false." *Id.* at 148-49. Critically, the court rejected the government's argument that the conduct was deceptive because (a) Finnerty's brokerage was a member of the NYSE, which had rules against interpositioning; and (b) as a result, his clients did not expect that he would engage in the practice. *See id.* at 150. The court held that even if "the [NYSE] rules amount to an assurance (by somebody) that interpositioning will not occur," the customers' upset expectations were not "based on any statement or conduct by Finnerty" and thus could not prove securities fraud. *See id.*[7]

This baseline principle—that deception requires expectations set by statements (or, in the case of the broader securities fraud statute, statements or actions or devices) *by the defendant*—has been broadly applied in the securities fraud context. *See, e.g.*, *Last Atlantis Cap. LLC v. AGS Specialist Partners*, 819 F. Supp. 2d 708, 716 (N.D. Ill. 2010) ("[P]laintiffs fail to provide any proof that the plaintiffs' expectations were *based on* the alleged misrepresentations made by

---

deception under the securities fraud statute's broader umbrella necessarily means that the same or similar conduct would not be deceptive under the narrower wire fraud statute.

[7] In a subsequent case, the Second Circuit affirmed *Finnerty*'s reasoning while distinguishing it on its facts. *See VanCook v. SEC*, 653 F.3d 130, 139-41 (2d Cir. 2011). In addition, the court observed that the SEC had subsequently determined that interpositioning was deceptive conduct on an implied misrepresentation theory, and that the SEC's ruling was owed *Chevron* deference. *See id.* at 140 n.8. That later development is immaterial here both because the Supreme Court has since overruled *Chevron*, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and because *Finnerty*'s relevance does not concern whether interpositioning is or is not misleading. *Finnerty*'s reasoning that deception under the securities fraud statute turns on the *defendant's conduct* (and, by analogy, a *defendant's statements* under the wire fraud statute) remains good law, as demonstrated by the discussion in *VanCook* distinguishing *Finnerty* on its facts and by courts' continued citation to *Finnerty* for the principle that *a defendant* must give the victim a "false impression." *See, e.g.*, *SEC v. Passos*, 760 F. Supp. 3d 95, 123 (S.D.N.Y. 2024).

7

Knight. The key language in *Finnerty III* states that a customer's expectation 'must be based on a statement or conduct' by Knight.").[8]

The application of this principle to this case is straightforward. The government cannot prove its fraud theory by establishing that the alleged Victim Traders believed their sandwich attacks could or would not be "unbundled" based on their understanding of statements supposedly made by third parties like Flashbots or the builder. Rather, the Peraire-Buenos' alleged later unbundling could be fraud only if (among other things) the Peraire-Buenos made misrepresentations that created that mistaken impression. In seeking to prove that theory (the only one charged here), the law limits the government to statements by the defendant. For these reasons, the Court should exclude evidence of these supposed third-party promises. This evidence includes screenshots of the Flashbots website containing written narratives that may have led Nonparty-1 to believe (mistakenly) that the MEV-Boost software "provided certainty that the proposed bundles would be published to the chain as originally ordered and structured, or not at all." ECF 111 at 3-4. It also includes the annotated versions of the Flashbots material provided by Nonparty-1 and related testimony regarding the expectations that Nonparty-1's representative derived from them. None of this evidence advances the government's case that the victim's upset expectations about their bundles were created by the Peraire-Buenos' alleged misrepresentations, and therefore it has no proper place at trial.

## II. Evidence of Third-Party Promises Unfairly Risks Conviction on an Invalid Theory.

The Peraire-Buenos anticipate that the government may argue that, even if the evidence of third-party promises does not prove its fraud theories, it is nevertheless relevant to some ancillary

---

[8] Order *clarified sub nom. Last Atlantis v. AGS Specialist Partners*, 2011 WL 223798 (N.D. Ill. Jan. 21, 2011).

issues. It is hard to see what issues those would be. If the government argues that the evidence is relevant to the alleged victims' state of mind and expectations generally, that begs the question why expectations that the Peraire-Buenos had no hand in creating are relevant. They are not. Similarly, an argument that such evidence is admissible as background to tell the story fails. If these aspects of that story do not bear on the alleged fraud, then they should not be put before the jury.

But assuming that there is some issue on which this evidence might be admissible under Rule 401, it should be excluded under Rule 403 because it risks confusing the jury and a conviction on a legally invalid theory. This risk is a product of the government's novel charges. The Indictment sets forth an unprecedented fraud theory. One of its many innovations is labeling things "misrepresentations" that are not even representations. The evidence at trial will defy these superficial labels. Neither the Lure Transactions nor the False Signature were representations at all. The evidence will show that neither alleged misrepresentation resembles what a lay juror might associate with a statement or promise he or she may encounter in his or her daily life— because, among other reasons, neither was conveyed in the English language or any other human language, and neither was directed to, or observed by, any human being. Rather, they are better understood as computer programming operations directed at non-sentient pieces of software that were never transmitted to, or interpreted by, any person.

In this context, there is a substantial risk that the jury will be confused by evidence of supposed third-party promises. The jury will be instructed that a fraud scheme requires a material misrepresentation. But the only "misrepresentations" that appear in any form that a person might understand come from third parties, not the Peraire-Buenos. If the evidence shows that those purported promises by Flashbots, the builder, or other third parties were incorrect, the jury may

9

mistakenly understand the incorrectness of those promises as a valid basis to convict the Peraire-Buenos of fraud. For the reasons set forth above, *see supra* pp. 5-8, that is incorrect. A limiting instruction (which would likely be necessary if this evidence is admitted for some limited purpose) would struggle to correct this misimpression in what is likely to be hyper-technical trial.

## CONCLUSION

For the foregoing reasons, the Court should exclude at trial evidence of, or argument about, supposed promises or other statements by entities other than the Peraire-Buenos that the alleged Victim Traders' sandwich attack bundles would remain intact.

Date: August 22, 2025

By: */s/ Katherine Trefz*

Katherine Trefz (*pro hac vice*)
Daniel Shanahan (*pro hac vice*)
Patrick J. Looby (*pro hac vice*)
Williams & Connolly LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
ktrefz@wc.com
dshanahan@wc.com
plooby@wc.com

Jonathan P. Bach
Shapiro Arato Bach
1140 Avenue of the Americas
17th Floor
New York, NY 10036
Tel: 212-257-4897
jbach@shapiroarato.com

*Counsel for Defendant
James Peraire-Bueno*

Respectfully submitted,

By: */s/ Daniel N. Marx*

Daniel N. Marx
William W. Fick (*pro hac vice*)
Fick & Marx LLP
24 Federal Street, 4th Floor
Boston, MA 02110
Tel: 857-321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

*Counsel for Defendant
Anton Peraire-Bueno*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 22, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in this matter who are on the CM/ECF system.

                                                                                                   */s/ Katherine Trefz*
                                                                                                    Katherine Trefz