**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ANTON PERAIRE-BUENO, and JAMES
PERAIRE-BUENO,

      Defendants.

Case No.:  1:24-cr-00293-JGLC

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
JOINT MOTION TO EXCLUDE CERTAIN TESTIMONY FROM NONPARTY-1**

**TABLE OF CONTENTS**

BACKGROUND ...............................................................................................................1

ARGUMENT...................................................................................................................3

I.     The Government Should Be Precluded from Eliciting Testimony or Making Argument About the Views, Expectations, and Analyses of Nonparty-1's MEV Bot with Respect to the Alleged Lure Transactions. .................................................3

II.    The Government Should Be Precluded from Eliciting Testimony or Making Argument About the Expectations, Analysis, or Actions of the Two Unknown Victim Traders' MEV Bots.........................................................................................6

CONCLUSION................................................................................................................6

Defendants James and Anton Peraire-Bueno respectfully move to preclude the government from eliciting certain testimony and making certain arguments related to the alleged victims. In particular, the government should be precluded from:

- Eliciting from the witness from Nonparty-1 (abbreviated herein as "NP1W")[1] testimony regarding: NP1W's views and expectations with respect to the alleged Lure Transactions; the views and expectations of Nonparty-1's MEV Bot with respect to the alleged Lure Transactions; any analysis the MEV Bot performed on the alleged Lure Transactions; or any coded logic executed by the MEV Bot in connection with the alleged Lure Transactions.

- Eliciting testimony or making arguments about the MEV Bots used by the two unknown alleged victims and any "coded conditions" that may have been proposed by them.

As discussed below, this testimony and argument would lack foundation, violate Federal Rule of Evidence 1002, and/or would violate the Peraire-Buenos' due process rights.[2]

## BACKGROUND

A few background procedural and factual points are relevant to this motion:

*First*, only one of the three alleged victims is known to the government or the defense (Nonparty-1). No productions have been received from the two unknown alleged victims. NPW1

---

[1] Pursuant to the Court's May 13, 2025 Order, ECF 87, the Peraire-Buenos refer to Nonparty-1 and its witness by anonymous monikers. The Peraire-Buenos note their position that it would be inappropriate for Nonparty-1 or NP1W to remain anonymous at trial.

[2] The Peraire-Buenos make this motion with a limited window into the potential testimony of NP1W: the government has declined to produce witness memoranda until September 16, 2025, *see* ECF 44 at 2; and has made limited representations as to the content of NP1W's testimony through its pleadings. Additional objectionable testimony from and arguments concerning the alleged victims thus may be identified at a later date.

presumably has no personal knowledge about the activities of the other alleged Victim Traders prior to the alleged exploit or the workings of their MEV Bots.

*Second*, although it had the authority and ample opportunity to do so, the government did not issue a grand jury subpoena to Nonparty-1. The government instead permitted Nonparty-1 to produce documents voluntarily and without any reliable way to determine whether the productions were selective and incomplete.

*Third*, the Peraire-Buenos have not been permitted to subpoena documents from Nonparty-1 that they view as necessary to their defense if certain testimony (discussed below) is elicited at trial. The Court granted Nonparty-1's Motion to Quash the Peraire-Buenos' subpoena as to all but Request No. 3. ECF 112. With respect to the Peraire-Buenos' request for the computer code underlying Nonparty-1's MEV Bots (Requests 1-2), the Court noted that it was relying on Nonparty-1's representation that "the information about expectations and intentions of the Victim Traders is found in the coded conditions. Nonparty-1 represented that the coded conditions would be produced in response to Request 3." *Id.* at 34. But on July 8, 2025, Nonparty-1 informed counsel for the Peraire-Buenos that it has no documents responsive to Request No. 3. Ex. 2. As a result, there will be no documentary proof at trial of the relevant expectations or intentions of Nonparty-1 or any "coded conditions" in Nonparty-1's MEV Bots.

*Fourth*, all steps taken by the alleged Victim Traders to assess and propose their sandwich attack trades on April 2, 2023 were done by way of pre-programmed computer programs—*i.e.*, the codes that comprise the MEV Bots. NP1W did not *himself* see and assess the alleged "Lure Transactions," personally decide that *he* wanted Nonparty-1's MEV Bot to propose a particular sandwich attack, and decide what conditions to propose with respect to any particular bundle of

transactions.  Nonparty-1's MEV Bot automatically did any or all of that work in a matter of seconds or less.

## ARGUMENT

**I.    The Government Should Be Precluded from Eliciting Testimony or Making Argument About the Views, Expectations, and Analyses of Nonparty-1's MEV Bot with Respect to the Alleged Lure Transactions.**

The government should be precluded from eliciting testimony about how Nonparty-1's MEV Bot interpreted the alleged Lure Transactions while they were in the public mempool, the place where transactions await inclusion in the blockchain.  Specifically, the government should not be permitted to elicit testimony about any part of the process of Nonparty-1's MEV Bot analyzing the alleged Lure Transactions and proposing bundles, including (i) any expectations derived by the MEV Bot (to the extent software can even have expectations); (ii) how or why the MEV Bot constructed specific transactions or bundles; or (iii) any meaning the MEV Bot intended to communicate to the builder proposing the bundles.  NP1W should also be precluded from testifying about any expectations Nonparty-1 had that resulted from the specific logic coded into Nonparty-1's MEV Bot.

The purpose of this testimony, if introduced by the government, would be to support a government argument that the Lure Transactions were materially misleading.  But NP1W did not observe the Lure Transactions, nor was he personally deceived by them.[3]  Rather, the government alleges that Nonparty-1's MEV Bot was deceived.  How the MEV Bot reacted to the Lure Transactions and the logic of the sandwich attack strategy it proposed around the Lure Transactions was determined exclusively and automatically by the MEV Bot's pre-programmed

---

[3] It thus should be undisputed that NP1W could not testify that *he* understood the Lure Transactions to convey any particular meaning, or directed any particular actions in response to them.

code.  Indeed, all of the transactions proposed and submitted in the alleged April 2, 2023 trades that are the subject of the Superseding Indictment ("Indictment") were done through automated computer programs with no human interaction.  Within seconds or less, Nonparty-1's MEV Bot—not NP1W—identified the Lure Transactions in the public mempool, attempted to attack them, and determined how much to risk as part of that sandwich attack strategy.

Considering these facts, testimony *from NP1W* about *the MEV Bot's* purported interpretation of, and response to, the Lure Transactions is inadmissible on at least two grounds.

First, it would violate due process where the Peraire-Buenos have been denied the opportunity to obtain the MEV Bot's source code that could be used to substantiate and/or rebut NP1W's anticipated testimony.  The government had the opportunity but chose not to obtain this code through a grand jury subpoena, and it is apparently content with the explanations of that code provided by Nonparty-1.  The Peraire-Buenos sought and were denied the opportunity to assess this code for themselves and to put on at trial affirmative evidence regarding how the code was pre-programmed to act in this circumstance or would have acted in another circumstance.  The Peraire-Buenos likewise have been denied the opportunity to get and use the code to cross-examine NP1W at trial.  It would be a denial of the Peraire-Buenos' due process rights for the government to be permitted to elicit testimony on a topic on which the Peraire-Buenos have been denied the ability to obtain documents to present a complete defense to the government's case.  *See California v. Trombetta*, 467 U.S. 479, 485 (1984) ("We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense."); *see also Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause . . . or in the Compulsory Process or Confrontation Clauses of the Sixth

4

Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (cleaned up)).

Second, evidence about how the MEV Bot automatically identified, assessed, and responded to the alleged Lure Transactions is evidence about the "content" of a writing and is therefore subject to Federal Rule of Evidence 1002. Rule 1002 requires that "if a party wishes to prove the content of a writing, it generally must do so by introducing the original," subject to the exceptions in Federal Rule of Evidence 1004. *Crawford v. Tribeca Lending Corp.*, 815 F.3d 121, 126-27 (2d Cir. 2016). While the original is not needed where the question is the *existence* of a writing, the document is required if its contents are being proven. *See, e.g.*, *United States v. Sliker*, 751 F.2d 477, 483-84 (2d Cir. 1984); *United States v. Hernandez-Fundora*, 58 F.3d 802, 808-09 (2d Cir. 1995). Computer code and data falls under Rule 1002. *See, e.g.*, *United States v. Bennett*, 363 F.3d 947, 954 (9th Cir. 2004) (violation of Best Evidence Rule where government witness testified about GPS data he saw to testify about defendant's location but government did not submit the data into evidence or establish an exception); *Unicom Sys., Inc. v. Farmers Grp., Inc.*, 2007 WL 9705875, at *9 (C.D. Cal. June 12, 2007) (sustaining objection under Rule 1002 to declaration "purport[ing] to testify about the contents of the source and object codes" for certain computer programs because, "[r]egardless of whether in hard copy or electronic form, these are 'writings'"). Under Rule 1002, NP1W could testify that a MEV Bot was used to assess the Lure Transactions, but he should not be permitted to testify as to the "contents" of the MEV Bot, including how it identified, assessed, or attempted to profit from the alleged Lure Transactions.[4]

---

[4] No exception under Rule 1004 should be deemed to apply. The government had the opportunity to obtain the code through a grand jury subpoena and chose not to. Nonparty-1 has not said that the code does not exist, just that it would be difficult to assemble and proprietary. (Given that Nonparty-1 was anonymously threatening the Peraire-Buenos with legal action shortly after the April 2, 2023 trades, and again after the Indictment, and has engaged proactively with law

II.    **The Government Should Be Precluded from Eliciting Testimony or Making Argument About the Expectations, Analysis, or Actions of the Two Unknown Victim Traders' MEV Bots.**

The Indictment makes allegations about the activity, expectations, and actions of the three alleged Victim Traders, *see, e.g.*, ECF 70 ¶¶ 22, 24, but only one of the three (Nonparty-1) is known to the government or the defense. No witness in this case had access to the unknown Victim Traders' MEV Bots and could testify as to these topics. The government should not be permitted to make arguments about the purported design, views, expectations, codes, or actions of the two unknown traders' bots, including by making inferential leaps based on NP1W's testimony. Any testimony or arguments by the government with respect to the views and expectations of, or analysis performed by, the Victim Traders should be limited to Nonparty-1 (subject to the arguments above).

## CONCLUSION

The Court should preclude the testimony from and about the alleged victims identified above.

Date: August 22, 2025                          Respectfully submitted,

By: */s/ Katherine Trefz*                       By: */s/ Daniel N. Marx*

Katherine Trefz (*pro hac vice*)               Daniel N. Marx
Daniel Shanahan (*pro hac vice*)               William W. Fick (*pro hac vice*)
Patrick J. Looby (*pro hac vice*)              Fick & Marx LLP
Williams & Connolly LLP                        24 Federal Street, 4th Floor
680 Maine Avenue SW                            Boston, MA 02110
Washington, DC 20024                           Tel: 857-321-8360
Tel: (202) 434-5000                            dmarx@fickmarx.com
ktrefz@wc.com                                  wfick@fickmarx.com
dshanahan@wc.com
plooby@wc.com                                  *Counsel for Defendant*
                                               *Anton Peraire-Bueno*

---

enforcement, Nonparty-1 presumably has taken document preservation efforts related to the relevant code.)

Jonathan P. Bach
Shapiro Arato Bach
1140 Avenue of the Americas
17th Floor
New York, NY 10036
Tel: 212-257-4897
jbach@shapiroarato.com

*Counsel for Defendant*
*James Peraire-Bueno*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2025, I electronically filed the foregoing document with

the Clerk of Court using the CM/ECF system which will send notification of such filing to all

counsel of record in this matter who are on the CM/ECF system.


*/s/ Katherine Trefz*
Katherine Trefz