# Exhibit F

```
M75CgilC
```

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          11 Cr. 409 (PAE)

STEFAN GILLIER,

                Defendant.

------------------------------x
                                        New York, N.Y.
                                        July 5, 2022
                                        9:35 a.m.

Before:

                HON. PAUL A. ENGELMAYER,

                                        District Judge

                          APPEARANCES

DAMIAN WILLIAMS,
     United States Attorney for the
     Southern District of New York
BY:  DINA McLEOD
     MICHAEL McGINNIS
     Assistant United States Attorneys

LEE GINSBERG
NADJIA LIMANI
     Attorneys for Defendant

ALSO PRESENT:
JANICE OVADIAH, French Interpreter
ERIC HEUBERGER, French Interpreter
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   extent the defense objects, it is to the spectre that the
2   government would make a "wholesale offering" of 699 pages of
3   court filings.  Such would be obviously problematic without a
4   tailored examination of specific statements therein, not just
5   to confirm compliance with Rule 801(d)(2)(D), but Rules 401
6   through 403.  But the government, I understand, is not seeking
7   that.  If I am wrong about that, the government is to alert me
8   following this conference, but the remedy will be to identify
9   additional counseled statements that the government seeks to
10  admit.

11          I'll turn next to evidence of conduct by Gillier's
12  that constitutes what the government terms his "flight" after
13  execution of Honeywell's attachment order, and his later
14  refusal to attend depositions in the United States.  The
15  government seeks to introduce such evidence as probative of
16  Gillier's consciousness of guilt.  Gillier argues that the
17  government has not met its burden with respect to such
18  evidence.

19          At the outset, I'll distinguish between the categories
20  of evidence that are contested here.  The first is paradigmatic
21  "flight" evidence:  That Gillier left the United States the day
22  after he was served with a civil attachment order that, in
23  substance, accused him of stealing from Honeywell.  The second
24  is Gillier's later failure to return to this country for four
25  noticed depositions in civil litigation that related to the

1  Honeywell scheme.  I'll take each in turn after briefly
2  recounting the legal standards governing the admissibility of
3  flight evidence.
4      As the Second Circuit, per then Judge and future
5  Justice Thurgood Marshall recognized back in 1962, "evidence of
6  flight generally is admissible as is other circumstantial
7  evidence.  It is not conclusive, but is subject to varying
8  interpretations.  The accepted technique is for the judge to
9  receive the evidence and permit the defendant to bring in
10  evidence in denial or explanation." *United States v. Ayala,*
11  307 F.2d 574, 576 (2d Cir. 1962).  The circuit has since held
12  that "probative value [of flight] as circumstantial evidence of
13  guilt depends upon the degree of confidence with which four
14  inferences can be drawn:  (1) from the defendant's behavior to
15  flight; (2) from flight to consciousness of guilt; (3) from
16  consciousness of guilt to consciousness of guilt concerning the
17  crime charged; and (4) from consciousness of guilt concerning
18  the crime charged to actual guilt of the crime charged."
19  *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005)
20  (internal quotations removed).  These requirements, the circuit
21  has stated, "ensure that the evidence is probative in a legal
22  sense and protects the defendant against the possibility of the
23  jury drawing unsupported inferences from otherwise innocuous
24  behavior." *United States v. Torres,* 435 F.Supp.3d 526, 537-38
25  (S.D.N.Y. 2020) (internal quotations removed).

Case 1:24-cr-00293-JGLC    Document 146-6    Filed 09/08/25    Page 5 of 10    12
M75CgilC

        Turning to the matters at issue, the four inferences identified by the circuit can easily be drawn from the evidence the government proffers of Gillier's flight from the United States in June 2006.  The government proffers that it will show that Gillier flew to Canada on June 15 — literally one day after he witnessed the execution of the civil attachment order at his Kansas warehouse and personal residence — and that he did not return to the U.S. until he was extradited here in 2020.  *See Al-Sadawi*, 432 F.3d at 425, holding that "evidence that a defendant fled immediately after a crime was committed supports an inference that the flight was motivated by a consciousness of guilt of that crime.  As the time between the commission of the offense and the flight grows longer, the inference grows weaker."  Critically, too, the civil attachment order here and ensuing civil litigation — on the government's theory — targeted Gillier's two-year long scam of Honeywell.  A jury could easily find that Gillier would have understood this dramatic action as a likely prelude to a criminal action against him based on the same alleged scam.  In other words, a jury could easily find that, based on Honeywell's attachment of this property, Gillier knew the jig was up.

        Gillier makes two arguments in response.  First, based on a more benign explanation for his actions, he contends that these did not bespeak consciousness of guilt.  As Gillier explains, he had "no choice" but to leave the U.S. after his

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  car, warehouse, and possessions were seized.  But whether
2  Gillier truly had "no choice" but to leave the country, and
3  whether that as opposed to fear of apprehension and ensuing
4  conviction drove his departure is an issue for the jury.  And
5  the government has an available factual counterargument:  It
6  proffers that Gillier, far from having nowhere to go in the
7  U.S., maintained an address in New York.  As the Second Circuit
8  has held:  "Absent unusual circumstances, what inferences are
9  suggested, or conclusively established, by the evidence are
10 matters to be argued to the jury by counsel."  *United States v.*
11 *Mundy*, 539 F.3d 154, 157 (2d Cir. 2008); *see also United States*
12 *v. Steele*, 390 F.App'x 6, 11 (2d Cir. 2010).  The circuit held
13 there that it was not an abuse of discretion to receive
14 evidence of flight where defendant proffered an alternative
15 explanation for his conduct and was permitted to offer that
16 explanation to the jury.  Based on the government's proffer, a
17 reasonable jury could easily infer consciousness of guilt based
18 on the suggestive timing and circumstances of Gillier's
19 departure.  At trial, Gillier will be at liberty to argue a
20 different, and more benign, interpretation of these events.
21          Gillier also notes that "there were no criminal
22 charges against Mr. Gillier on June 14, 2006."  That, however,
23 is not decisive.  The relevant timeframe, the circuit has held,
24 is the "time between the commission of the offense and the
25 flight."  *United States v. Al-Sadawi*, 432 F.3d 419, 424

1   (2d Cir. 2005). Given that Honeywell's civil litigation
2   targeted an allegedly unknowing fraud, a jury could reasonably
3   infer that its court-approved attachments would have signaled
4   to Gillier that a follow-on criminal action was forthcoming.
5         I'll briefly address two collateral issues implicated
6   by the government's flight evidence. First, there is a
7   potential hearsay problem posed by receiving the content of the
8   civil attachment order in evidence, as such effectively accuses
9   Gillier of the crime for which he will stand trial in this
10  court. To cure that problem, the government states that it
11  will not offer the content of Honeywell's attachment papers for
12  their truth. That is the right solution. On a request from
13  the defense, I stand at the ready to give the jury a limiting
14  instruction that the content of the civil attachment order and
15  associated papers is admissible to show only the effect of that
16  order on Gillier's knowledge and intent and to explain his
17  ensuing conduct.
18        Second, Gillier asserts that, after the execution of
19  the civil attachment order on June 14, 2006, he flew from
20  Kansas to New York to meet with attorneys to discuss matters
21  including "the civil cases brought against him by Honeywell."
22  On the facts proffered, that meeting is clearly inadmissible.
23  As the government notes, the bare fact that Gillier met with a
24  lawyer could only be offered in an attempt to imply that
25  Gillier's New York counsel authorized some aspect of his

behavior, presumably his ensuing flight, and to pull the sting of that flight as evidence of consciousness of guilt.  But receiving the fact of such a meeting would allow the defense to end-run the established obligations with respect to advice-of-counsel evidence.  And Gillier, despite a proper request from the government, has not disclosed an intent to give an advice-of-counsel defense, either as to the schemes alleged or the discrete act of flight.

Courts in this district have been reluctant to permit the defense to pursue a "presence-of-counsel" defense without requiring the defendant to meet the criteria necessary to mount an advice-of-counsel-defense.  *See, e.g.*, *SEC v. Tourre*, 950 F.Supp.2d 666, 683-84 (S.D.N.Y. 2013); *SEC v. Lek Securities Corp.*, 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019).  Apart from permitting a defendant to benefit from an incomplete advice-of-counsel defense, a presence-of-counsel defense may also be highly misleading to a jury.  That is because the mere presence of counsel is not probative of anything.  It does not establish what was said between client and counsel.  And, where there is not evidence that all relevant information was disclosed to counsel and that counsel's ensuing advice was followed, it cannot establish the defendant's good-faith reliance on the advice of counsel.  *See SEC v. Stoker*, 11 Civ. 7388 (JSR) (S.D.N.Y. 2012), Dkt. 100 at 895-96, where Judge Rakoff recognized that "absent evidence that counsel knew

either the information that Mr. Stoker allegedly kept secret, at least from outsiders, or knew the information that the SEC claims were distorted misrepresentations, the role of counsel in any of this was totally irrelevant." As Judge Forrest explained in *SEC v. Tourre*, the risk of prejudice in introducing "presence-of-counsel" evidence is that "a lay jury could easily believe that the fact that a lawyer is present... means that he or she must have implicitly or explicitly "blessed" the legality of [the act in question]." 950 F.Supp.2d at 683-84.

That concern would be squarely implicated here were Gillier permitted to offer the fact of his meeting with an attorney. Introducing evidence that Gillier met with an attorney right after his business and personal property were attached could — without more — suggest to the jury that his counsel blessed his subsequent conduct, the flight, and/or perhaps his prior conduct toward Honeywell. But Gillier has not proposed to offer admissible evidence of the foundation of any such advice-of-counsel defense. Such would require Gillier to show "that he: (1) honestly and in good faith sought the advice of counsel; (2) fully and honestly laid all the facts before his counsel; and (3) in good faith and honestly followed counsel's advice, believing it to be correct and intending that his acts be lawful." *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012). There has been no defense proffer

1   whatsoever as to what Gillier informed his counsel, what
2   information was available to counsel, what advice counsel
3   thereupon gave Gillier, when these interactions occurred, or
4   even who the counsel were that purportedly gave Gillier
5   pertinent advice.  For all we know, the meeting Gillier had
6   with an attorney on the eve of his flight did not concern legal
7   matters at all, or if it concerned legal matters, ones relating
8   to this case at all.  For all we know, it involved estate
9   planning or flight insurance.  Accordingly, the Court excludes
10  evidence that Gillier met with his counsel before leaving the
11  United States.  I do so under the case authority above and
12  under Rules 401 through 403.  There is no non-speculative
13  probative value to Gillier's meeting with an attorney, and even
14  if there were, the meeting has clear and substantial potential
15  to confuse and mislead the jury, and to unfairly prejudice the
16  government.
17          I'll turn now to the government's motion as it relates
18  to evidence of Gillier's failure to appear for four noticed
19  depositions in the Honeywell civil litigation.  The government
20  seeks to introduce such evidence to show that Gillier's
21  "behavior went beyond merely choosing not to return, as he
22  repeatedly defied his legal obligation to return to the United
23  States and appear for depositions in the Kansas litigation on
24  four separate occasions."  Gillier's civil counsel, in legal
25  filings, described the depositions as functionally "an attempt