UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

ANTON PERAIRE-BUENO and JAMES
PERAIRE-BUENO,

                              Defendants.

24-CR-293 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

The Government has submitted six motions *in limine* and Defendants have submitted

eight motions *in limine.* For the reasons stated herein, the parties' motions are GRANTED in part

and DENIED in part. The Court will rule on the remaining motions *in limine* for which the Court

has not issued a decision herein at or following the Final Pretrial Conference.

## BACKGROUND

The Court assumes the parties' familiarity with the procedural and factual background of

this case, which was detailed in the Court's Opinion and Order on Defendants' motions to

dismiss at ECF No. 112. Instead, the Court provides only the following brief recitation of facts.

Defendants Anton and James Peraire-Bueno are accused of exploiting the integrity of the

Ethereum blockchain in order to fraudulently obtain approximately $25 million worth of

cryptocurrency. The Superseding Indictment charges Defendants with wire fraud, conspiracy to

commit wire fraud, and conspiracy to commit money laundering.

## LEGAL STANDARD

A district court's inherent authority to manage the course of trials encompasses ruling on

motions *in limine*. *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion *in*

*limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of

DRAFT

certain forecasted evidence." *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y.

2001). Rulings on motions *in limine* are subject to change as the trial unfolds. *Luce*, 469 U.S. at

41–42.

## DISCUSSION

I. **The Government's Motions *in Limine***

    A. **Statements of the Defendants, Their Co-Conspirators, and Their Agents**

The Court addresses each category of statements raised in the Government's omnibus

motion below. *See* ECF No. 125.

    1. **The Defendants' Own Statements in Various Communication Platforms**

        i. **Exploit Planning Documents**

The Government's motion to allow the introduction of Defendants' planning documents

is GRANTED in part and DENIED in part. Because a statement made by and offered against an

opposing party is not hearsay, the documents created by Defendants are not hearsay. Fed. R.

Evid. 801(d)(2)(A). Those documents may be properly admitted, and Defendants do not dispute

this. *See* ECF No. 145 at 6.

However, with respect to related messages from others, the Court reserves decision until

trial. Related messages from others are permitted to provide context surrounding Defendants'

statements that are not offered for the truth of the matter asserted. *See United States v. Guzman*,

754 F.2d 482, 487 (2d Cir. 1985) (admitting evidence of questions asked of defendant because

they were offered "not for the truth of what he asserted, but to render [defendant's] answers

intelligible"). However, although the Government has submitted its exhibit list, the Court is

presently unable to ascertain which related messages the Government intends to introduce related

to this motion. Accordingly, the Court declines to make a categorical ruling without hearing the

proffered evidence and knowing the context in which it is entered. *See United States v. Lingat*,

DRAFT

No. 21-CR-573 (MKV), 2024 WL 1051633, at *6 (S.D.N.Y. Mar. 11, 2024), *aff'd sub nom. United States v. Lemay*, No. 24-2328-CR, 2025 WL 1873404 (2d Cir. July 8, 2025); *In re United States*, 945 F.3d 616, 630 (2d Cir. 2019) ("A district court may defer ruling where, for example, the resolution of a pretrial motion might depend in part upon evidence to be introduced at trial.").

### ii.  Exploit Code

The Government's motion to allow the introduction of the exploit code into evidence is GRANTED. "Computer-generated data [is] . . . not hearsay [because] [i]n these circumstances, there is no declarant making a statement." *CA, Inc. v. Simple.com, Inc.*, 780 F. Supp. 2d 196, 224 (E.D.N.Y. 2009). There appears to be no dispute that code is admissible as non-hearsay. *See* ECF No. 145 at 6 ("The Peraire-Buenos do not object to admitting the so-called 'exploit code' as non-hearsay."). As such, either party may use the exploit code as evidence.

### iii.  Internet Search History

 The Court will hear oral argument on this motion at the Final Pretrial Conference and will rule on the motion at or shortly after the conference.

### 2.  Ledgers, Notes, and Other Contemporaneous Documentation

The Government's motion to introduce ledgers and notes made by CC-1, Defendants, and other alleged co-conspirators is GRANTED on a conditional basis. Rule 801(d)(2)(E) provides that a statement is not hearsay if . . . "the statement is offered against an opposing party and . . . was made by the party's co-conspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "In order for a statement to fall within the definition of 801(d)(2)(E), a court must find (1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *United States v. Saneaux*, 392 F. Supp. 2d 506, 511 (S.D.N.Y. 2005) (internal citation and quotation marks omitted).

DRAFT

These prerequisites must be proven by a preponderance of the evidence. *Id.* Before trial, the Court may assume that the Government will meet the prerequisites and conditionally admit the statements. *See United States v. Paredes*, 176 F. Supp. 2d 183, 188–89 (S.D.N.Y. 2001) (conditionally admitting co-conspirator statements and assuming that the threshold considerations would be proven by the Government by a preponderance of the evidence at trial); *United States v. Guo*, No. 23-CR-118 (AT), 2024 WL 3275265, at *1 (S.D.N.Y. July 1, 2024) (cleaned up) ("[T]he Court may admit coconspirator statements during trial on a conditional basis, subject to the later submission of the necessary evidence to establish that the coconspirator exception is applicable.").

Here, the Government intends to offer ledgers made contemporaneously with the conduct at issue in the trial by CC-1 and notes CC-1 maintained to keep track of the alleged conspiracy activities. ECF No. 125 at 18–20. These statements are permitted to the extent they were "designed to promote or facilitate achievement of the goals of th[e] conspiracy." *United States v. Rivera*, 22 F.3d 430, 436 (2d Cir. 1994); *see also United States v. Mustafa*, 753 F. App'x 22, 36–37 (2d Cir. 2018) (affirming the introduction of evidence, including letters and a ledger, seized from a co-conspirator as probative of defendant's intent). Accordingly, the Court preliminarily admits the co-conspirator statements described above, subject to the Government's "submission of the necessary evidence of relevant prerequisites." *United States v. Malka*, 602 F. Supp. 3d 510, 533 (S.D.N.Y. 2022) (alterations adopted) (quoting *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993)).

### 3. CC-3's Statement to CC-1 After the Exploit

The Government's motion to admit CC-3's statement to CC-1 at a work retreat after the exploit is DENIED. According to the Government, CC-3 joked at a work retreat that he hoped the next time he met with Defendants and CC-1 that it would not be in jail. ECF No. 125 at 22.

DRAFT

The Government contends that this statement either is not hearsay or it is a co-conspirator statement made in furtherance of the charged money laundering conspiracy and that the statement facilitated or protected conspiratorial activities. *See* ECF No. 125 at 22–23. The Court disagrees. The statement, which is an alleged joke about potential consequences of their actions alleged in this case, is being offered to show that CC-3 was worried about potential criminal liability—in other words, that it is being offered for the truth of that statement. As such, a hearsay exception must apply. The Government points to the co-conspirator exception; however, it is not satisfied here. The statement does not appear to advance any criminal activity, and the Government fails to explain how it does. The Court is also hard-pressed to understand how the statement furthered or protected the conspiracy—it appears unrelated to either supposed objective.

Even if it were admissible, the Court also finds that this statement does not satisfy Rule 403 balancing. The Government has not established the relevance of this statement with respect to Defendants and their intent, and in light of the inflammatory nature of the statement, the person making the statement, and the lack of any tie to Defendants' intent, it presents the high risk of creating undue prejudice to Defendants.

### 4. Publicly Available Documents Saved to the Defendants' Electronic Accounts and Devices

The Court will hear oral argument on this motion at the Final Pretrial Conference and will rule on the motion at or shortly after the conference.

### 5. Flashbots' Communications

The Court addresses each category of communication raised in the Government's motion.

#### i. Flashbots' Public Guides for MEV-Boost, Announcements, and Disclosures

DRAFT

The Court will hear oral argument on this motion at the Final Pretrial Conference and will rule on the motion at or shortly after the conference. It is unclear to the Court which exhibits the Government contends are instructions as opposed to which exhibits the Government contends are relevant context for the instructions.

### ii. Flashbots Post-Mortem

The Court will hear oral argument on this motion at the Final Pretrial Conference and will rule on the motion at or shortly after the conference.

### B. Direct Evidence Pursuant to Rule 404(b)

The Government's motions to offer certain direct evidence pursuant to Federal Rule of Evidence 404(b) are GRANTED. First, the Government seeks to admit certain communications from Defendants that discuss certain coding vulnerabilities (apart from the one alleged in this case) and actions Defendants discussed taking as a result. ECF No. 125 at 31–33. Second, the Government seeks to introduce at trial Defendants' pre- and post-2022 statements regarding Flashbots, MEV-Boost, privacy protocols, and bundled transactions. *Id.* at 33–35. Third, the Government seeks to admit Defendants' communications with Coinbase including (i) James's communications between April 2022 and May 2022 regarding his personal account, (ii) Anton's communications in April 2022 regarding his personal account, and (iii) Anton's communications in February 2023, late 2023, and early 2024 regarding both Pine Needle Inc.'s account and his personal account. *Id.* at 35–38.

The parties generally dispute whether these statements are admissible under Rule 404(b), and Defendants also contend that the evidence is unduly prejudicial under Rule 403. The Court agrees that the evidence is admissible under Rule 404(b) to prove knowledge, preparation and absence of mistake for the reasons articulated in the Government's motion. *See* ECF No. 125 at

DRAFT

28–38. This evidence is also not unduly prejudicial. Instead, it is highly relevant to show these

proper 404(b) purposes, and the Court sees no undue prejudice with their admission.

### C.  Hypothetical Questions to Show Materiality

The Government's motion seeking a ruling allowing hypothetical questions to show

materiality is GRANTED in part and DENIED in part. The Government intends to ask

hypothetical questions of fact witnesses such as Victim-1 and the Flashbots Representative to

prove the materiality of false and misleading representations and half-truths. ECF No. 125 at 38.

This line of questioning is permitted in accordance with the Second Circuit's decision in *United

States v. Cuti*, which held that "a witness may testify to the fact of what he did not know and

how, if he had known that independently established fact, it would have affected his conduct or

behavior." 720 F.3d 453, 459 (2d Cir. 2013). However, the hypothetical questions must be

limited by the factual foundation laid in earlier admitted testimony and exhibits, and should bear

on the impact of the fraud. *Id.* at 458–459.

The Government intends to ask Victim-1 whether Victim-1 would have traded if they had

known that the trades could be "prematurely viewed by a validator, unbundled, and switched."

ECF No. 125 at 41. Victim-1 has personal knowledge because Victim-1 used MEV-Boost to

trade, and Victim-1's decision to trade using MEV-Boost may have changed if they knew the

MEV-Boost validator could or would take certain actions with respect to Victim-1's transaction

bundles. "Such hypothetical questions are especially useful to elicit testimony about the impact

of fraud." *United States v. Velissaris*, No. 22-CR-105 (DLC), 2022 WL 17076747, at *5

(S.D.N.Y. Nov. 18, 2022) (internal citation and quotation marks omitted). Additionally,

"investor witnesses are equipped to provide testimony on the impact of their decisions as either

DRAFT

fact testimony under Rule 602 or lay opinion testimony under Rule 701." *United States v. Chang*, No. 18-CR-681 (NGG) (CLP), 2024 WL 3303717, at *9 (E.D.N.Y. July 3, 2024).

Therefore, to the extent "the proper foundation is established for each question and that the[] questions are posed as hypotheticals without requiring the jury to assume the guilt of the defendant," they are permitted. *Id.*; *see also United States v. Guo,* No. 23-CR-118 (AT), 2024 WL 1862022, at *6–7 (S.D.N.Y. Apr. 29, 2024) (permitting hypothetical questions to investors such as "would you have liked to know [x]" or "would [x] have been important to you" without reference to the alleged promises or statements actually made). For the questions that are admitted, Defendants are of course "free to challenge the factual accuracy" of these witnesses' testimony on cross-examination. *Id.* at *6 (cleaned up). Additionally, the Court intends to instruct the jury on how to properly consider this testimony. *See, e.g.*, *United States v. Eisenberg*, No. 23-CR-10 (S.D.N.Y. May 10, 2024), ECF No. 170 at 132. For these reasons, the Government's motion is GRANTED with respect to hypothetical questions directed to Victim-1.

The Government's proposed hypothetical questioning of the Flashbots Representative, however, does not pass muster at this stage. The Government intends to ask the Flashbots Representative whether, absent the False Signature, the MEV-Boost relay would have submitted a valid block for publication. ECF No. 125 at 41–42. However, the Government has not demonstrated how the Flashbots Representative was personally involved in this transaction at the time it occurred. *Cf. United States v. Cuti*, 720 F.3d at 458 ("Each [witness] was . . . personally familiar with the accounting of the transactions at issue."). The Flashbots Representative is not an investor and made no trading decision that would be affected by the alleged misrepresentation. Because of this, it remains unclear how, if the Flashbots Representative knew an independently established fact, "it would have affected his conduct or behavior." *Id.* at 459.

DRAFT

Accordingly, at this time, the Government's motion is DENIED with respect to hypothetical questions directed to the Flashbots Representative.

### D. Precluding Defendants from Introducing Evidence and Arguments on the Basis that They Are Irrelevant and Unfairly Prejudicial

#### 1. Evidence or Argument that the Victims Engaged in Inappropriate Trading Strategies

The Government's motion to preclude evidence or argument that the alleged victims engaged in inappropriate trading strategies is DENIED as moot. Defendants have confirmed that they will not argue that (i) Nonparty-1's trading strategy was unlawful, (ii) Defendants' conduct was lawful because "everyone was doing it," (iii) Defendants should be given a pass because they "robbed the rich to help the poor," or (iv) Defendants should be acquitted because the victim traders were negligent, careless, or gullible. ECF No. 145 at 33–34 (alterations adopted). Instead, they plan to argue and present evidence about the "reality of sandwich attacks, their mechanics, and their place in the Ethereum ecosystem." *Id.* at 35. This evidence, according to Defendants, includes that, the middle trade was placed by some other user, that sandwich attacks require a vast investment of money from sophisticated entities, and that there was no guarantee that the MEV-Bots' sandwich strategy would ultimately succeed. *Id.* at 35–37. These areas appear appropriate for argument and inquiry.

This information is relevant to, at a minimum, inform the meaning of the alleged "Lure Transaction," Defendants' intent to defraud, and Defendants' response to the alleged Victim Traders' anonymous demands. The jury is entitled to understand the relevant context and contours of the trading environment. *See United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009). Indeed, evidence is often admissible "to provide background for the events alleged in the indictment" or "to enable the jury to understand the complete story of the crimes charged." *Id.* (quoting *United States v. Reifler,* 446 F.3d 65, 91–92 (2d Cir.2006)). Accordingly, Defendants

DRAFT

are entitled to present evidence on how sandwich attacks occur and their place in the Ethereum

Network ecosystem.

> ### 2. Evidence and Argument that Cryptocurrency Is Unregulated, that the Government's Charging Decisions Were Improper, or that "Code Is Law"

The Government moves to exclude evidence and argument that cryptocurrency is

unregulated, exclude evidence and argument that the Government's charging decisions were

improper, and preclude Defendants from arguing that "code is law." This motion is DENIED in

part as moot and GRANTED in part. Defendants have confirmed that they do not intend to

challenge the Government's charging decisions, argue that "anything goes" in cryptocurrency

markets, or that simply because MEV-Boost did not prevent the Exploit that Defendants'

conduct must be legal. *See* ECF No. 145 at 38–39.

Instead, they intend to argue and present evidence that Ethereum is decentralized,

trustless by design, and neither the Government nor Ethereum imposed rules prohibiting

Defendants' trading strategy. *Id.* The Court agrees that most of this is proper. The jury is entitled

to understand the nature of the trading environment (including that code is visible and that

adversarial strategies are often used) in evaluating the alleged fraudulent conducted here and

Defendant's intent. *United States v. Blanco*, 811 F. App'x 696, 704 (2d Cir. 2020) (internal

citation and quotation marks omitted) ("[B]ackground evidence may be admitted to show, for

example, the circumstances surrounding the events or to furnish an explanation of the

understanding or intent with which certain acts were performed.").

Arguments and evidence that there are no Government rules prohibiting Defendants'

trading strategy, however, do cross a line. This has the strong potential to mislead the jury into

believing Defendants' conduct was legal here simply because Ethereum is not Government-

regulated in the way that other markets are. This argument is just another version of the "code is

DRAFT

law" justification that Defendants acknowledge is improper. As such, the Court will permit argument and evidence to give the jury context into the trading environment, what traders on the platform had access to, and the nature of trading strategies on the platform, but the Court will not permit argument that effectively amounts to "code is law"—that is argument that because the Code permitted the conduct or the Government does not regulate this conduct, the conduct was legal.

### 3.   Argument and Evidence Regarding the Involvement of Counsel

The Court will hear oral argument on this motion and the Government's belatedly filed motion to preclude presence of counsel arguments, ECF No. 159, at the Final Pretrial Conference and will rule on the motions at or shortly after the conference.

### 4.   Evidence of the Defendants' Personal Circumstances and Potential Punishment

The Government's motion to exclude evidence of Defendants' personal circumstances and potential punishment is DENIED. The Government seeks to preclude any evidence or argument concerning Defendants' family background, lack of criminal history, age, or any other similar factors. ECF. No. 125 at 55–56. The Government also seeks to preclude any evidence or argument concerning punishment or the consequences Defendants face if convicted. *Id.* at 56–57. First, Defendants have stated that they "have no intention of arguing that the jury should take pity on them or consider their potential punishment. . . ." ECF No. 145 at 47. Therefore, the Government's motion is moot with respect to potential punishment.

Second, evidence concerning certain aspects of Defendants' respective backgrounds, including their educational background, is permitted. *See United States v. Blackwell*, 853 F.2d 86, 88 (2d Cir. 1988) (noting that evidence concerning a defendant's background such as his education and employment is routinely admitted without objection); *accord United States v.*

DRAFT

*Rossy*, No. 22-CR-550-02 (NSR), 2023 WL 8237055, at *1. While unnecessary references to

their age is not permitted—including to argue that it indicates a lack of intent—the Court, at this

time, sees no need to preclude passing references to Defendants' ages. *See United States v.*

*Washington*, No. 21-CR-603 (VEC), 2023 WL 6219203, at *10 (S.D.N.Y. Sept. 22, 2023)

(internal citation and quotation marks omitted) ("District courts possess wide discretion

concerning the admissibility of background evidence, including the Defendants' personal

characteristics.").

      Third, Defendants contend that they should be permitted to offer evidence that they are

law-abiding citizens, claiming that such evidence is admissible under Rule 404(a)(2)(A). ECF

No. 145 at 47. The Court agrees. While a person's character is not generally admissible to prove

that, on a particular occasion, the person acted in accordance with their character, Fed. R. Evid.

404(a)(1), the rule permits a criminal defendant "to offer evidence of a personal opinion or h[is]

reputation for a pertinent character trait," *United States v. Rossy*, No. 22-CR-550-02 (NSR), 2023

WL 8039500, at *6 (S.D.N.Y. Nov. 20, 2023) (citing Fed. R. Evid. 404(a)(2)(A)); *see also*

*United States v. Han*, 230 F.3d 560 (2d Cir. 2000) (finding that the trial court erred in excluding

testimony regarding defendant's reputation for being a law-abiding citizen). The justification is

based on notions of fairness; "the defendant who, with the considerable forces of the government

arrayed against him and who may have little more than his good name to defend himself, should

not be precluded from presenting even such minimally probative evidence." *United States v.*

*Pujana-Mena*, 949 F.2d 24, 30 (2d Cir. 1991). Defendants may not, however, introduce specific-

acts character evidence. *See* Fed. R. Evid. 405(b); *United States v. Menendez*, 759 F. Supp. 3d

460, 529 (S.D.N.Y. 2024) (affirming, on a motion for acquittal, the exclusion of specific act

evidence because admission of such evidences is "confined under Rule 405(b) to cases in which

DRAFT

character is, in the strict sense, an issue, and hence deserving of the searching inquiry") (internal

citation omitted); *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997) ("[I]f specific good

deeds could be introduced to disprove knowledge or intention, which are elements of most

crimes, the exception of Rule 405(b) would swallow the general rule of 405(a) that proof of

specific acts is not allowed.").

### E.  Limiting Cross-Examination

The Government's motion to preclude certain lines of cross-examination of Victim-1 and

of witnesses called to testify regarding discrete topics or for limited purposes is DENIED as

moot. Federal Rule of Evidence 611(b) applies, and cross-examination shall not "go beyond the

subject matter of the direct examination and matters affecting the witness's credibility." Fed. R.

Evid. 611(b). Defendant agrees and acknowledges this limitation. *See* ECF No. 145 at 52.

### F.  Authentication of Certain Records

The Government's motion to permit the authentication of (i) certain records that were

created and maintained in the regular course of business by certain third parties (e.g., Google,

Slack, Discord, X Corp., FedWire, GitHub, Apple, and various banks and cryptocurrency

exchanges), (ii) screenshots from the Wayback Machine, and (iii) publicly available blockchain

records (e.g., from blockchain explorer websites including Etherscan and Beaconchain), is

DENIED as moot. The parties agree that the aforementioned records are self-authenticating

without the need for testimony from a custodian of records.

## II.    Defendants' Motions *in Limine*

### A.  Evidence and Argument Concerning Uncharged Theories of Fraud

Defendants' joint motion to exclude evidence concerning uncharged theories of fraud is

DENIED. *See* ECF No. 127. Defendants assert that evidence or argument that they committed

fraud through means other than material misrepresentations or devised a scheme to victimize

DRAFT

anybody other than the alleged Victim Traders would result in a constructive amendment of the Superseding Indictment. ECF No. 128. To amount to a constructive amendment, there must be a "deviation between the facts alleged in the indictment and the proof underlying the conviction [that] undercuts the constitutional requirements of the Grand Jury Clause: allowing a defendant to prepare his defense and to avoid double jeopardy." *United States v. Hild*, 644 F. Supp. 3d 7, 52 (S.D.N.Y. 2022), *aff'd,* 147 F.4th 103 (2d Cir. 2025) (quoting *United States v. Bastian*, 770 F.3d 212, 220 (2d Cir. 2014)). However, "the Second Circuit has never suggested that a 'to wit' clause binds the government to prove the exact facts specified in a criminal indictment. Instead, it has repeatedly held that the *specific means* used by a defendant to effect his or her crime does not constitute an 'essential element' of the offense, and therefore, proof of specific means apart from those charged in the indictment does not constructively amend the indictment." *United States v. Teman*, 465 F. Supp. 3d 277, 298–99 (S.D.N.Y. 2020), *aff'd,* No. 21-1920-CR, 2023 WL 3882974 (2d Cir. June 8, 2023) (cleaned up).

"If the indictment notifies the defendant of the core of criminality, and the government's proof at trial does not modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury, then [Defendants have] sufficient notice of the charge against which [they] must defend." *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007) (internal citations and quotation marks omitted). Importantly, courts undertake this analysis post-trial, because the Court cannot make this determination absent the Government's evidence. Indeed, "these issues only ripen when the Government has actually put in its case" and there "is no way that the [C]ourt could address these issues until after the Government's evidence comes in." *United States v. Connolly*, No. 16-CR-370 (CM), 2018 WL 2411760, at *7 (S.D.N.Y. May 15,

DRAFT

2018). As such, the Court has no basis to consider Defendants' motion pre-trial, and it is denied as premature.

### B.  Evidence of Promises by Third Parties

Defendants' joint motion to exclude evidence of or argument about supposed promises and statements by entities other than the Peraire-Buenos that the alleged Victim Traders' sandwich attack bundles would remain intact is DENIED. *See* ECF No. 129. Evidence concerning the purpose, design, functionality, and intended use of MEV-Boost is relevant to establishing the elements of the charged wire fraud. *United States v. Williams*, 585 F.3d at 707 (internal citations omitted) (explaining that "evidence is often admissible to provide background for the events alleged in the indictment or to enable the jury to understand the complete story of the crimes charged."). "In order to prove the existence of a scheme to defraud, the government must also prove that the misrepresentations were material, and that the defendant acted with fraudulent intent." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (per curium) (internal citations and quotation marks omitted); *see United States v. Saint Clair*, No. 22-2100, 2024 WL 413422, at *4 (2d Cir. Feb. 5, 2024) (same). This evidence is probative and material in that it explains why the Defendants' alleged misrepresentations were potentially misleading. The Court further finds that the probative value outweighs the minimal risk of jury confusion.

### C.  Certain Post-Trade Google Search History

The Court will hear oral argument on this motion at the Final Pretrial Conference and will rule on the motion at or shortly after the conference.

### D.  Certain Testimony from Nonparty-1

Defendants' joint motion to preclude the government from eliciting certain testimony and making certain arguments related to the alleged victims is DENIED. *See* ECF No. 133. The Government is permitted to elicit testimony from Victim-1, which is admissible pursuant to

DRAFT

Federal Rule of Evidence 1004(a), which dictates that "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . all the originals are lost or destroyed, and not by the proponent acting in bad faith." Additionally, the Government has confirmed that it does not intend to call any other victims (aside from Victim-1) at trial or to otherwise introduce evidence of other alleged victims' subjective expectations or the design of their MEV Bots. ECF No. 146 at 26 n.14. Objective evidence with respect to those alleged victims is relevant and permitted. *See* Fed. R. Evid. 401 (explaining that evidence is relevant if it would have a "tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action"); Fed. R. Evid. 402 (providing that any "[r]elevant evidence is admissible" unless precluded by "the United States Constitution; a federal statute; [the Federal Rules of Evidence]; or other rules prescribed by the Supreme Court").

### E.  Undisclosed Expert Testimony

Defendants' joint motion to exclude at trial undisclosed expert testimony from the government's witnesses is DENIED as moot. *See* ECF No. 135. The government has asserted that it does not intend to elicit expert testimony from its law enforcement witnesses. *See* ECF No. 146 at 32. And as the Court has already found, the anticipated testimony from certain Government witnesses is not expert testimony to the extent that it is based on the witnesses' personal knowledge, rationally based on that witness's perception, and is not rooted exclusively in that witness's expertise. *See* ECF No. 119. The Court indicated that it would provide an explanation for this ruling and does so now.

Testimony is expert testimony when "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of

DRAFT

reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the

principles and methods to the facts of the case." Fed. R. Evid. 702. If a witness is not testifying

as an expert, opinion testimony is limited to testimony that is "(a) rationally based on the

witness's perception; (b) helpful to clearly understanding the witness's testimony or to

determining a fact in issue; and (c) not based on scientific, technical, or other specialized

knowledge within the scope of Rule 702." Fed. R. Evid. 701. The Court finds that the anticipated

testimony from Nonparty-1, CW-1, and the Flashbots Representative falls within the bounds of

Rule 701 and is properly categorized as lay opinion testimony.

Nonparty-1's anticipated testimony includes testimony regarding his MEV Bots' trading

activity and his use of the MEV-Boost software, and his connection to and investigation of the

alleged exploit on April 2, 2023. ECF No. 111 at 11. This testimony is not based on scientific,

technical or other specialized knowledge within the scope of expert testimony. Fed. R. Evid.

701(c). Instead, Nonparty-1's testimony concerns factual matters known to him and based on his

own "experiences with matters pertinent to this case." *United States v. Cuti*, 720 F.3d at 460

(designating accountants' testimony as lay opinion where "witnesses testified based only on their

experiences with matters pertinent to this case, and their reasoning was evident to the jury").

Defendants also take issue with Nonparty-1's proposed testimony concerning the

explanation of cryptocurrency roles, the roles of MEV-Boost participants, and related topics. *See*

ECF No. 103 at 11. However, to the extent necessary, a lay witness may testify as to facts

"helpful to clearly understanding the witness's testimony or to determining a fact in issue." Fed.

R. Evid. 701(b); *see also Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 111 (2d

Cir. 2002) (affirming the district court's finding that a witness offered lay opinion testimony

when he explained the meaning of certain terms used in the copyright context because it was

DRAFT

"rationally based on his perceptions" and it was "helpful to the jury's understanding" of central issues of fact). The Court permits Nonparty-1 to do so here.

The Flashbots Representative's anticipated testimony similarly falls within their personal knowledge and appears to be based on their rational perception of events. According to the Government, this representative will describe how the MEV-Boost software was exploited, the steps Flashbots took to understand and remediate the exploit, and why it was important to Flashbots to do so. ECF No. 111 at 14. The Flashbots Representative directly participated in the investigation and remediation efforts, and therefore, their testimony will be based on that personal knowledge. *See United States v. Afriyie*, 929 F.3d 63, 70 (2d Cir. 2019) (affirming admission of lay testimony where the witness had "contemporaneous involvement with the transactions at issue" despite the fact that his "testimony about the investigation he undertook in his role as an employee also referred to his specialized knowledge."). "[T]he fact that a witness has specialized knowledge, or that he carried out an investigation because of that knowledge, does not preclude him from testifying pursuant to Rule 701, 'as long as the testimony [is] based on his investigation and reflect[s] his investigatory findings and conclusions, and [is] not rooted exclusively in his expertise." *United States v. Velissaris*, 2022 WL 17076747, at *3 (alterations adopted) (quoting *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007)). The Government has indicated that his testimony will be limited in this regard.

CW-1's anticipated testimony is also lay opinion testimony. It is anticipated that CW-1 will testify about how Defendants planned, executed, and concealed the alleged exploit based on CW-1's own participation. ECF No. 111 at 12. This is permissible lay opinion testimony. As the Second Circuit has made clear, "where a witness derives his opinion solely from insider perceptions of a conspiracy of which he was a member, he may share his perspective as to

18

DRAFT

aspects of the scheme about which he has gained knowledge as a lay witness subject to [Fed. R.

Evid.] 701, not as an expert subject to Rule 702." *United States v. Yannotti,* 541 F.3d 112, 126

(2d Cir. 2008); *accord United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (finding that a

witness did not impermissibly offer expert testimony about the effects of disputed

reclassifications where testimony was based on his observations as an employee). Although CW-

1's testimony may be complex, it is proper lay opinion testimony in that is based on his

"experience in the [alleged] conspirac[y], in which he was an active member, who participated

personally." *United States v. Ghavami*, 23 F. Supp. 3d 148, 170 (S.D.N.Y. 2014), *aff'd sub nom.*

*United States v. Heinz,* 607 F. App'x 53 (2d Cir. 2015); *see also Yannotti,* 541 F.3d at 126

(admitting co-conspirator testimony despite the fact that loansharking is an activity about which

the average person does not have knowledge, because the co-conspirator reached his opinion

from his own loansharking experience derived from a reasoning process familiar to average

persons). Accordingly, the Court will also permit this testimony as contemplated by the

Government.

### F. Evidence that Tether Froze Cryptocurrency at the Behest of a Foreign Government

Defendants' joint motion to exclude evidence and argument indicating that the

blockchain platform Tether froze the Peraire-Buenos' accounts at the request of foreign

government (Israeli law enforcement) is DENIED. *See* ECF No. 137. The jury will be instructed

that this evidence is admitted solely to show Defendants' awareness of foreign law enforcement

activity and does not bear on whether Defendants' conduct violated the wire fraud statute. To the

extent the parties would like to propose language for an instruction to this effect, they may do so

by **October 8, 2025.**

DRAFT

### G. Certain News Articles

The Court will hear oral argument on this motion at the Final Pretrial Conference and will rule on the motion at or shortly after the conference.

### H. Exclude Twitter Screenshot as Purported Proof of the Alleged False Signature

The Court will hear oral argument on this motion at the Final Pretrial Conference and will rule on the motion at or shortly after the conference.

## CONCLUSION

For the foregoing reasons, the Government's motions *in limine* are GRANTED in part and DENIED in part and Defendants' motions *in limine* are GRANTED in part and DENIED in part. The Court will hear oral argument and rule on the remaining motions *in limine* in advance of the trial. These motions include:

(1) the Government's motion to allow the introduction of Defendants' internet search histories and Defendants' related joint motion to exclude evidence of their Google searches for seemingly legal topics;

(2) the Government's motion to introduce news articles and public documents saved to Defendants' electronic accounts and devices, or shared among defendants and their alleged co-conspirators, and Defendants' related motion to exclude certain news articles;

(3) the Government's motion to introduce MEV-Boost online user guides, and Flashbots' public announcements and postings;

(4) the Government's motion to introduce the Flashbots' post-mortem;

(5) the Government's motions seeking to preclude argument and evidence regarding the involvement of counsel; and

DRAFT

    (6) Defendants' motion to exclude the Twitter screenshot as purported proof of the

        alleged false signature.

The Court has also reviewed the Government's Daubert motion, ECF No. 148, and Defendants'

opposition, ECF No. 156. The parties should be prepared to discuss this motion at the final

pretrial conference. In particular, the Court is most interested in arguments regarding the

qualifications of the proposed experts and the bases for their opinions.

        The Clerk of Court is respectfully directed to terminate ECF Nos. 125, 127, 129, 131,

133, 135, 137, 139, 141, and 159.

Dated:  September 29, 2025
       New York, New York

                             SO ORDERED.

                             JESSICA G. L. CLARKE
                             United States District Judge