**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 3, 2025

**BY ECF**
Honorable Jessica G. L. Clarke
United States District Judge
500 Pearl Street
New York, NY 10007-1312

Re:   *United States v. Peraire-Bueno*, S1 24 Cr. 293 (JGLC)

Dear Judge Clarke:

Pursuant to the Court's September 30, 2025 order (Dkt. 164), the Government writes regarding the Court's current version of the scheme to defraud jury instruction. For the reasons discussed below, the Government respectfully requests that the Court make the edits reflected in Exhibit A, a proposed redline of the Court's instruction.

On September 17, 2025, the parties filed their joint proposed requests to charge, which included the Government's requested scheme to defraud instruction. (Dkt. 154 at 17-22). The Government continues to believe that its requested instruction most fairly and accurately summarizes the relevant law. At the conference on September 30, 2025, however, the Court stated that it was "most inclined to give an instruction along the lines of *Sand*." (Tr. at 83; *see also* Tr. 87). That same day, the Court emailed the parties the current version of the proposed instruction. While the Court's current instruction largely mirrors *Sand*, the Government respectfully submits that it diverges from *Sand*, and the case law on which it is based, in critically important ways.

First, as reflected in several points in Exhibit A, the current instruction changes or omits particular words or phrases from *Sand* in a manner that is inconsistent with precedent and increases the Government's burden beyond that required under the law. For example, in describing the materiality standard, the word "might" is changed to "would," which carries a different meaning and unfairly increases the Government's burden. *See, e.g.*, *United States v. Caltabiano*, 871 F.3d 210, 219 (2d Cir. 2017); *United States v. Dinome*, 86 F.3d 277, 280 (2d Cir. 1996). As another example, the current instruction adds words not appearing in *Sand*, such as "intentional" and "wrongly." Given the Court's intention to rely on the *Sand* instruction, the Government respectfully requests that the *Sand* instruction not be modified in ways that increase the Government's burden. Exhibit A contains various edits to harmonize the instruction with *Sand*.

Second, and critical to the jury's ability to fairly apply the law to the Government's case, the current instruction entirely omits the portion of *Sand* indicating that "[d]eceitful statements of half truths or the concealment of material facts . . . may also constitute false or fraudulent statements." As the Government has repeatedly noted, one way for it to prove its case is by showing that the defendants made implied misrepresentations through half truths and the concealment of material facts. (*See, e.g.*, Dkt. 100 at 91-92; Dkt. 146 at 6 n.4, 7-9; Dkt. 154 at 24 n.23). It is thus critically important for the jury to receive a half truths instruction.

It is undisputed that the *Sand* instruction on this point is legally accurate. As the defendants

have already acknowledged, "material misrepresentations can take the form of . . . misleading 'half-truths' (or 'implied misrepresentations')." (Dkt. 154 at 27-28 n.27; *see also id.* ("[A] misrepresentation need not be a false statement of fact; it can also be established through misleading half-truths . . . .")). At the September 30, 2025 conference, the Court recognized this point as well. (Tr. 83). And, notably, a half truths instruction was given in all three cases cited by the Court's current instruction: *Albin*, *Javice*, and *Eisenberg*.

In a pretrial motion, the defendants attempted to preclude the Government from relying on an implied misrepresentation theory, claiming that the Indictment's "to wit" clause confines the Government to proving its case by showing that the "Lure Transactions" and "False Signature" were false statements. (Dkt. 128 at 7). In its recent opinion, the Court explicitly rejected that argument. (Dkt. 163 at 13-15). Consistent with that ruling, the jury should be instructed on the Government's implied misrepresentation theory—using the express language of *Sand*.

The defendants have also argued that the jury should not receive a half truths instruction because, they claim, the Government is only alleging "false statements," not half truths. But it is entirely fair and appropriate for the Government to argue that representations were misleading in multiple ways—both because they were false and because they created a misleading impression by omitting or concealing material information. *Cf. United States v. Ferguson*, 676 F.3d 260, 278 (2d Cir. 2011) (Government "need not choose between an "actual knowledge" and a "conscious avoidance" theory); *United States v. Hopkins*, 53 F.3d 533, 542 (2d Cir. 1995) (same).

In any event, the instructions regarding half truths are plainly applicable in this case. For example, the Government intends to prove that the defendants submitted "bait" transactions to the mempool that they knew would induce the victim traders to propose certain trading bundles, even though the defendants also knew that they actually planned to remove the "bait" transactions and replace them with other "dump" transactions. In doing so, the defendants—at the very least—made implied representations that they actually intended to go through with the proposed transactions and were not simply proposing them as the first step in a pre-programmed plan to trick other market participants. If not outright misrepresentations, these were half truths that concealed material facts.

The Seventh Circuit addressed a similar scheme in *United States v. Chanu*, 40 F.4th 528 (7th Cir. 2022). In *Chanu*, the defendants placed "fake bids and offers"—which "they intended to cancel prior to execution"—to "trick other market participants" into making disadvantageous trades, thereby earning the defendants a profit. *Id.* at 534. Under these circumstances, the Seventh Circuit held that the defendants "advanced a quintessential 'half-truth' or implied misrepresentation—the public perception of an intent to trade and a private intent to cancel in the hopes of financial gain." *Id.* at 541. Likewise, here, the defendants advanced—at the very least— an implied misrepresentation by publicly signaling the intent to engage in particular transactions while privately intending to use those purported transactions to trick other market participants. Consistent with *Chanu*, the Government should receive the *Sands* instruction on half truths.

For similar reasons, the Court's current instruction should be amended to make clear that the Government is not limited to proving its case through false "statements." As reflected in Exhibit A, the Government proposes various edits to convey that it can satisfy its burden through fraudulent half truths or implied misrepresentations—not just false statements.

In addition to the above requests, the Government respectfully proposes the addition of one

sentence that is rooted in the relevant caselaw: "Indeed, conduct alone can deceive another, even in circumstances where a person's statements contain no misrepresentation." Although this sentence is not in *Sand*, it is an important and accurate statement of law. (*See* Ex. A (collecting cases)). Nothing in *United States v. Chastain*, 145 F.4th 282 (2d Cir. 2025) upended this well-settled legal principle. The *Chastain* panel—with one judge dissenting—criticized criminalizing conduct that "fails to match the 'reflection of moral uprightness, of fundamental honesty, fair play and right dealing.'" *Id.* at 296. The Government is not asking for this language, and the Court in *Chastain* appears to have taken issue with it because, in the context of the instruction in that case, the Court believed it could have given the jury the misimpression that it could convict without finding that an object of the defendant's scheme was to obtain money or property. Nothing in *Chastain* suggests that deceptive conduct cannot qualify as a "fraudulent pretense" under the wire fraud statute or that a spoken or written statement is required. *Chastain* did not involve that issue, and just one day before *Chastain* was released, another panel of the Second Circuit unanimously stated that a "scheme exists although no misrepresentation of fact is made." *United States v. Hild*, 147 F.4th 103, 111 (2d Cir. 2025).

Applying this longstanding law would not result in the statute being overly broad. Instead, it would merely reflect the fact that there is no legal or logical distinction between deceptive acts that are characterized as "statements" and those characterized as "conduct." Both can give a victim a false impression, which is the essence of fraud. For example, rolling back odometers to convey the false message that a car you are reselling has a certain number of miles is no different than falsely telling the customer the same fact. *See Schmuck v. United States*, 489 U.S. 705, 714-15 (1989) (conduct of rolling back odometers constitutes wire fraud). Courts have consistently held—in a variety of contexts—that conduct can constitute wire fraud without any false statement. *See, e.g.*, *United States v. Rafsky*, 803 F.2d 105, 108-09 (3d Cir. 1986) (check kiting); *Carpenter v. United States*, 484 U.S. 19, 27 (1987) (misappropriating confidential business information); *United States v. Altman*, 48 F.3d 96, 101 (2d Cir. 1995) (embezzlement); *United States v. Pacilio*, 85 F.4th 450, 460-61 (7th Cir. 2023) (placing trades with intent to cancel them). The Court can instruct the jury on this well-established law without expanding the scope of the wire fraud statute in any way. And it should give the Government's "conduct alone" instruction to avoid distracting the jury with pointless semantic arguments about whether a particular deception constitutes a "statement" or "conduct"—a meaningless distinction under the wire fraud statute.

Finally, as reflected in Exhibit A, the Government opposes the materiality instructions that are not included in *Sand*. These instructions are unnecessary, confusing, do not seem to arise from wire fraud cases, and were not given in *Albin* or *Javice*. (It appears that these instructions were included in *Eisenberg* because that case also charged commodities fraud, where the materiality standard is the objectively reasonable investor. *See United States v. Phillips*, --- F.4th ----, 2025 WL 2528201, at *18 (2d Cir. Sept. 3, 2025).) The instruction regarding witness testimony not being controlling is likely to confuse jurors, who may misunderstand it to mean that they need something more than a witness's testimony to find materiality. Likewise, the Government opposes instructing the jury that a "reasonable person" means a person of ordinary intelligence "in the position of a trader on the Ethereum Network." Such an instruction would alter the well-settled materiality standard in a manner that again increases the Government's burden beyond that required by law. The Government is also concerned that jurors—likely unfamiliar with Ethereum Network traders—will find this instruction difficult to apply. The Government thus respectfully requests that the Court give the standard materiality instructions contained in *Sand*.

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

by: _____/s/_____
        Danielle Kudla / Jerry Fang /
        Benjamin Levander / Ryan Nees
        Assistant United States Attorneys
        (212) 637-2304 /-2584 /
        (914) 993-1930 / (212) 637-1595

Cc: Counsel of Record (by ECF)