LAW OFFICES
WILLIAMS & CONNOLLY LLP

PATRICK J. LOOBY
(202) 434-5150
plooby@wc.com

680 MAINE AVENUE SW
WASHINGTON, DC 20024
202.434.5000
WWW.WC.COM

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

October 14, 2025

<u>Via ECF</u>
The Honorable Jessica G. L. Clarke
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 11B
New York, NY 10007

      Re:    *United States v. Anton Peraire-Bueno, et al.*, 24 Cr. 293 (JGLC) – Defendants' Objections to Purported Lay Opinion Testimony by Robert Miller

Dear Judge Clarke:

      Defendants Anton Peraire-Bueno and James Peraire-Bueno respectfully submit this letter to inform the Court of the bases for certain anticipated objections to the potential testimony from government witness Robert Miller that would violate Federal Rules of Evidence 602 and 701 and the Court's Order on the Peraire-Buenos' motion *in limine* to exclude undisclosed expert testimony. *See* ECF 163 at 16-19.[1] Mr. Miller is a product developer at Flashbots referred to in prior pleadings as the Flashbots Representative. In its September 29, 2025, Order, the Court ruled that Mr. Miller's testimony would be limited to his investigation of the alleged Exploit—including "how the MEV-Boost software was exploited, the steps Flashbots took to understand and remediate the exploit, and why it was important to Flashbots to do so." ECF 163 at 18 (citing, *inter alia*, *United States v. Afriyie*, 929 F.3d 63, 69 (2d Cir. 2019)).

      Regarding opinion testimony for employee witnesses involved in company investigations, the Second Circuit in *Afriyie* stated: "An employee's testimony grounded in an investigation he undertook in his role as an employee is admissible under Rule 701; to the extent the employee's testimony reflects specialized knowledge resulting from extensive experience, however, it is not." 929 F.3d at 69 (cleaned up) (citing *Bank of China v. NMB LLC*, 359 F.3d 171, 181-82 (2d Cir. 2004)); *accord Bank of China*, 359 F.3d at 182.

---

[1] As discussed at the final pretrial conference, the Peraire-Buenos submit this letter to identify testimony that would be inconsistent with the Court's prior rulings on their motion to compel expert disclosures and related motion to preclude undisclosed expert testimony, *see* ECF 103, 136, without waiving their objections and arguments elaborated therein that substantial portions of Mr. Miller's likely testimony on technical matters is undisclosed expert testimony under Rule 702.

WILLIAMS & CONNOLLY LLP

October 14, 2025
Page 2

Moreover, the government always must lay a foundation that any lay testimony (factual and opinion) is based on a witness's perception and personal knowledge. *See United States v. Garcia*, 291 F.3d 127, 140 (2d Cir. 2002); Fed. R. Evid. 602. Opinion testimony lacking such foundation is speculative and unhelpful. *See* Fed. R. Evid. 701(a), (b).

The 3500 material for Mr. Miller suggests that the government may seek to elicit opinions that are (a) based on Mr. Miller's expertise in Ethereum unconnected to any findings of the investigation into the alleged exploit of the MEV-Boost relay code and (b) on which Mr. Miller lacks sufficient personal knowledge. These potential opinions include:

1. **That the Ethereum protocol or protocol specifications function as rules, and whether the Peraire-Buenos' actions violated, and/or were contrary to, any Ethereum protocol, protocol specification, rule and/or guidance.** Mr. Miller is a product developer at Flashbots, a private company, who has been involved with the distribution of certain software products like MEV-Boost. MEV-Boost is not Ethereum. But Mr. Miller is also an experienced MEV "searcher" on Ethereum and thus familiar with certain concepts separate and apart from his job responsibilities. To the extent Mr. Miller has any opinions about Ethereum's protocol generally, or how the Peraire-Buenos' actions may relate to the Ethereum protocol, those conclusions are based on his expertise and not grounded in his investigation into the events of April 2, 2023 relating to the supposed exploit of the MEV-Boost relay code. Potential inadmissible opinion testimony in this category includes:

    o Testimony equating the Ethereum protocol to rules and explaining what it means to follow the rules. *See* 3506-001 at 1 ("Rules are specifications agreed upon amongst various Ethereum community members in a complicated governance process."); 3506-005 at 3 ("EP [Ethereum protocol] – rules for what's permissible or not[.]").

    o Testimony narrating or explaining Ethereum's—*i.e.*, not MEV-Boost's—protocol specifications. *See* 3506-008 at 3, 6 (discussing "Builder API"); *id.* at 4-5 (discussing "Ethereum consensus-specs"); *see also* 3506-006 at 5 ("how validator is selected (caveat [is] that RM is not a[n Ethereum] consensus researcher)").

    o Testimony that the Ethereum protocol "has rules on what you can add to blockheader – can't build on chain of blocks that's noncanonical – rules on what makes blockheader valid/invalid." 3506-005 at 4.

Under the Court's ruling, Mr. Miller may testify generally about the process by which blocks are added to the Ethereum blockchain and the role of validators on Ethereum to the extent that testimony is grounded in his investigation and necessary to explain its specific findings. But Rule 701(c) does not permit general exposition from Mr. Miller on direct examination about what a protocol is, how the jury is to consider the Ethereum protocol by way of analogy to rules, or detailed explanations of different features of the Ethereum protocol and related opinions about whether the Peraire-Buenos acted consistently with it.

WILLIAMS & CONNOLLY LLP®

October 14, 2025
Page 3

2. **Ethereum community expectations for "honest" validators.** Similarly, as a lay witness, Mr. Miller may not opine on the concept of an "honest" validator, either by interpreting Ethereum protocol specifications containing that term or by conveying his views of the "consensus" of Ethereum users. *See* 3506-008 at 4 ("Expectations for honest validators … No canonical source that is the one true source, but there is generally consensus in community on what the honest behaviors are, including things like GX 3205.").

3. **The meaning conveyed by the alleged "False Signature" to the Ultrasound Relay and/or its materiality.** Mr. Miller may not opine on the meaning, function, and/or materiality of the alleged False Signature that was communicated to the Ultrasound Relay because this falls outside the scope of his investigation and his personal knowledge. The Ultrasound Relay was not implemented or run by Flashbots. Flashbots publishes open-source relay code that others can download and modify to add features. Mr. Miller has informed the government that he does not know if, or how, the Ultrasound Relay was modified. *See* 3506-004 at 6; 3506-010 at 1. Mr. Miller also has informed the government that Flashbots does not maintain records for the Ultrasound Relay. *See* 3506-001 at 8. Mr. Miller thus has never seen proof of the alleged False Signature as it was supposedly conveyed to the Ultrasound Relay, and he does not appear to have access to the code for that relay. Instead, the government has shown the witness images taken from a third-party blog post when discussing the blockheader for the relevant block, *see, e.g., id.* 6-8, or an image from a website that purports to show a later block which slashed the Peraire-Buenos' validator, *see* 3506-012 (discussing GX 5012-BD). This testimony is inadmissible because it requires Mr. Miller to interpret for the first time documents he did not review as part of his investigation, including those shown to him for first time in trial prep sessions. Moreover, Mr. Miller lacks any personal knowledge about how the Ultrasound relay behaved on April 2, 2023. To the extent he heard things from Ultrasound relay employees during his investigation, that hearsay information falls outside his personal knowledge. For these reasons, any testimony from Mr. Miller about how the Ultrasound Relay allegedly was tricked falls outside of his investigation and his personal knowledge. Moreover, Mr. Miller is the wrong witness to answer questions concerning the materiality of the alleged False Signature because he was not the recipient of the alleged misrepresentation. *See* ECF 145 at 31-32. As the Court previously determined when denying the government's motion to ask these questions of Mr. Miller, "the Government has not demonstrated how [Mr. Miller] was personally involved in this transaction at the time it occurred." ECF 163 at 8.

4. **The operation of the Peraire-Buenos' validator code.** Mr. Miller has informed the government that he does not know whether the Peraire-Buenos' validator used the MEV-Boost program, or a custom program, in its interactions with the Ultrasound Relay or to assemble the block it ultimately proposed. *See* 3506-002 at 1; 3506-004 at 7. He has speculated that the Peraire-Buenos' validator may have run custom code but admits that he has never seen it. *See* 3506-001 at 9. For these reasons, the government may not elicit from Mr. Miller opinions about the process by which the Peraire-Buenos' validator signed the blinded beacon block conveyed by the Ultrasound Rely or about the process by which the validator assembled its own block that was ultimately published on the blockchain.

WILLIAMS & CONNOLLY LLP

October 14, 2025
Page 4

                                                                                                                                         Respectfully submitted,

By: */s/ William Fick*                                          By: */s/ Patrick J. Looby*
Fick & Marx LLP                                                          Williams & Connolly LLP
*Counsel for Defendant*                             *Counsel for Defendant*
*Anton Peraire-Bueno*                               *James Peraire-Bueno*

cc: Counsel of Record via ECF