

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

October 21, 2025

**BY ECF**
The Honorable Jessica G.L. Clarke
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Anton Peraire-Bueno, et al.*, S1 24 Cr. 293 (JGLC)

Dear Judge Clarke:

      The Government respectfully submits this letter regarding the testimony of Travis Chen on October 20, 2025, during which Mr. Chen made passing reference to the term "salmonella." (Tr. 682). For the reasons outlined below, the Government respectfully submits that no limiting instruction is necessary and no door has been opened to additional evidence or argument relating to the 2021 Salmonella attack.[1]

      At the October 9, 2025, pretrial conference, the Court precluded any testimony with respect to the Salmonella attack pursuant to Federal Rule of Evidence 403, finding that the admission of such evidence would "necessitate a mini trial on the differences between a Salmonella attack and the conduct alleged [in this matter], wasting time and clouding the issues for the jury." (Tr. 6-7). Over the course of more than six hours of direct testimony, Travis Chen made a single reference to Salmonella as follows:

> Q: Why was the block referred to as the "poison block" with the dump transactions?
>
> A: It was a bit of a shout-out to a previous operation that was called salmonella that also referred to the block as poison, that somebody else ran, but, more generally, it's a block that's harmful to sandwichers.

(Tr. 681-682).

      The question was not intended to elicit anything about Salmonella in the witness's response, and to the contrary, sought to elicit information about Mr. Chen and the defendants' specific actions. The Government proffered that no further evidence would be elicited on direct

---

[1] The Government continues to discuss alternatives with the defense but at this time, no agreement has been reached.

examination or in future arguments. Based on the limited and discrete nature of the reference, there is no prejudice to the defendants. The testimony elicited in fact informs the jury that there was a prior "operation" that was "harmful to sandwichers"—providing enough information for the jury to understand the use of the word "salmonella" in Mr. Chen's testimony without improperly eliciting the facts of that 2021 attack.

Any further reference to "Salmonella"—as the defendants have characterized it as a "counter-strategy" against "sandwich traders" or to be considered for when evaluating the defendants' *mens rea*—is improper for the reasons detailed in the Government's October 1, 2025 letter brief. (*See* Dkt. 165 at 2-3). The Salmonella attack did not constitute a defensive "counter-strategy" for a trader to merely protect their own bona fide trades from getting sandwiched. In short, the defendants' efforts to present evidence and argument regarding the 2021 Salmonella attack suffer two separate fatal flaws.

*First*, the Salmonella attack was likely an uncharged fraud. Evidence, argument, or a limiting instruction suggesting that it was "reasonable" for the defendants to think that they were "doing nothing wrong" as a result of the 2021 Salmonella attack and the apparent lack of criminal consequences imposed on the Salmonella attackers—evidence that focuses "on whether others may have committed uncharged crimes"—is a "waste of time and thus is totally irrelevant." *United States v. White*, No. 02 Cr. 1111 (KTD), 2003 WL 721567, at *7 (S.D.N.Y. Feb. 28, 2003); *see* Dkt. 125 at 48 (collecting cases). (*See* Dkt. 165 at 2). To litigate the merits of the Salmonella attack and its fraudulent nature will necessitate a mini-trial. And that evidence is equally improper if offered for the defendants' stated purpose of showing that victims should have been more diligent in safeguarding against a scheme like the defendants' Exploit given the existence of the prior Salmonella attack.[2] (*See* Dkt. 165 at 2-3 (collecting cases and explaining that evidence "that other sandwich traders had previously been the victim of a 2021 attack is no more relevant to the defendants' guilt in this case than, for example, evidence in a lottery scam case that numerous other elderly victims previously had been defrauded by similar scams")).

*Second*, the Salmonella attack differs from the defendants' Exploit in fundamental ways—including, but not limited to, that it predates MEV Boost and "Proof-of-Stake" Ethereum, did not involve exploiting a coding vulnerability in widely used software infrastructure, and was carried out by an individual living outside of the United States. Any further argument or evidence regarding the 2021 Salmonella attack would require the Government to elicit further testimony as to how Salmonella attack differs from the facts at issue here, necessitating a mini-trial on the fundamental differences between the Salmonella attack and the defendants' Exploit, waste time, and cloud the issues for the jury. (*See* Dkt. 165 at 3 (citing *United States v. Gatto*, 986 F.3d 104, 118 (2d Cir. 2021)). As the Court already held, these arguments are unduly prejudicial under Rule 403 and would serve to confuse and mislead the jury.

---

[2] Specifically, the defendants have previously proffered that the Salmonella attack is relevant because it shows both that (i) Victim-1 should not have considered "the sandwich attack strategy [to be] risk-free and that efforts to unbundle a sandwich attack would be" expected; and (ii) it was "reasonable for an individual [*i.e.*, the defendants] who attempted to thwart a sandwich attack and beat the MEV Bots at their own game to believe he is doing nothing wrong." Dkt. 145 at 37.

Moreover, the passing reference to "Salmonella" in Travis Chen's extensive testimony did not come close to opening the door to further argument or evidence, or otherwise necessitate a limiting instruction on the issue. "The concept of 'opening the door,' or 'curative admissibility,' gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence." *United States v. Lumiere*, 249 F. Supp. 3d 748, 759 (S.D.N.Y. 2017) (quoting *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992)). "To be admissible under the doctrine of curative admissibility, the evidence that allegedly opened the door must in fact have been inadmissible." *Rea*, 958 F.2d at 1225. Put differently "[p]roperly admitted evidence does not open the door to inadmissible evidence." *Id.*; *see United States v. Brown*, 921 F.2d 1304, 1307 (D.C. Cir. 1990) ("'Curative admissibility' is a shield, not a sword."). Here, there has been no introduction of inadmissible evidence and there is no false impression to rebut. Chen merely stated in passing that there was "a previous operation that was called salmonella . . . that somebody else ran, . . . [which was] harmful to sandwichers." Trial Tr. at 681-82. That is all the jury in this case should appropriately know about the 2021 Salmonella attack, and no further action is required.

Based on the foregoing, the Government respectfully submits that, consistent with the Court's October 9, 2025 ruling, evidence and argument of the 2021 "Salmonella" attack should remain precluded.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: _____/s/_____
    Danielle Kudla / Jerry Fang /
    Benjamin Levander / Ryan Nees
    Assistant United States Attorneys